Harold J. Rowe et al., partners, doing business as Ambro Advertising Agency, appellees, v. State Tax Commission, appellant.

No. 49378.

(Reported in 91 N.W.2d 548)

1208

July 28, 1958.

Norman A. Erbe, Attorney General, Francis J. Pruss, Special Assistant Attorney General, and J. M. Barrett, Special Counsel, all of Des Moines, for appellant.

T. M. Ingersoll, R. O. Daniel and Thomas M. Collins, of Elliott, Shuttleworth & Ingersoll, all of Cedar Rapids, for appellees.

BLISS, J.—The plaintiff partnership, Ambro Advertising Agency, is commonly known as Ambro and will be so referred to herein. Its principal place of business is at Cedar Rapids, Iowa. It is engaged for profit in the advertising agency business in Iowa, generally, with some media of advertising specifically excepted. Its customers, or clients, are from an expansive list of businesses. It is a member of, or affiliated with, an association or network of similar advertising agencies, about forty in number in the United States and Canada, known as the National

Advertising Agency, which had its inception in 1932. The purpose and the operation of the plaintiff and of like agencies is to render service to their patrons or clients in the conception and procurement of printed publications of various kinds, advertising their respective businesses and products.

Ambro had an art director, but the production of the advertising literature was by other suppliers. At the inception of its relations with a client a printed "Advertising Agency Service Agreement" was executed. This agreement provided:

"The Client agrees to place all publication and other commissionable advertising it may do * * * through the Agency. * * * The Client shall reimburse the Agency for all expenditures and payments made on the Client's account, and in addition thereto shall pay the Agency for its respective services, * * *. Photographs, sketches, drawings, engravings, compositions, electrotypes, matrices, radio talent, electrical transcriptions and other art and mechanical items, incident to the conduct of advertising, or special service purchased from vendors shall be charged to the Client at cost to the Agency plus a service charge of fifteen per cent of the gross amount. * * * The Agency's invoices shall be due and payable upon the due dates stated thereon. The Client shall have the benefit of cash discounts earned, as allowed by publications and other media. * * * The books of the Agency, in so far as they pertain to the Client's account, shall be open at proper intervals for audit by the Client or his duly qualified and appointed representative. * * * It is expressly understood that unless otherwise specified the Agency shall act as the agent of the Client and not as a vendor."

There has been no change in this agreement since 1948.

The preceding quotations were copied from the original agreement executed by the Iowa Electric Light and Power Company and Ambro Advertising Agency, introduced in evidence as an illustrative exhibit.

When such an "Advertising Agency Service Agreement" had been made with a client, Ambro, in the performance of its service, had a printed blank form. In the upper left corner were blank lines for the name and address of the supplier of any

advertising media. In the upper right-hand corner were blanks for the name and address of Ambro's client. The particular blank, in evidence as an exhibit, was an order for engraving plates, with blank space for their description, and shipping directions. Printed on the blank form was the following direction to the supplier: "For Account Of Client Named, Kindly Supply [the] Following And Bill To Us Unless Otherwise Specified."

Also printed on the blank form was the following:

"Please Note Carefully.

" * * * 5—Unless our own name appears as 'Client', we place this order as agent for a disclosed principal, under specific authorization covering items ordered, hence only the Client's credit is involved and Client's final approval of service rendered is essential."

Ambro's general purchase orders were identical with the one last noted.

Another exhibit introduced by Ambro was a blank form used by W. D. Lyon Company, another advertising agency of Cedar Rapids, Iowa, designated as a "Purchase Order", which contains a direction to the vendor, in substance the same as the quotation just preceding.

Ambro also used a blank form designated "Material Estimate and Authorization", executed in quadruplicate and directed to the client, to whom one was sent for execution and approval. It was an itemized estimate of the cost of producing the advertising service ordered.

On the blank, contiguous to the blank lines for the signature of the client, was the following printing:

"To Ambro Advertising Agency,
            Dows Building, Cedar Rapids, Iowa.

"We hereby authorize you, as our agent, to purchase for our account the material specified above; to use same, as finally approved in our advertising, and to recover and hold the preparational material in accordance with our service agreement. It is understood that in purchasing art, original or duplicate plates, composition, printing or any miscellaneous craft or distributing

service, on our account, you will use your respective standard purchase order blanks, the conditions of which we approve. For material and/or other services hereby authorized and so purchased we hereby assume final responsibility to vendors. We understand that unless agreed or upset prices are clearly stated above, the prices given are only estimated, to be adhered to as closely as possible, instructions and quality considered."

Ambro purchased advertising from Iowa suppliers and from out-of-Iowa suppliers for its disclosed clients. All questions concerning purchases from Iowa suppliers have been eliminated from this appeal, and only out-of-Iowa purchases are involved.

Appellant, on or about June 2, 1954, made an audit of appellees' books and records for the period from January 1, 1949, through September 30, 1953, and as a result thereof made a use-tax assessment for that period against appellees for $1644.99 with penalty of $534.87, for a total of $2179.66. Prior to the trial the Commission submitted the following substituted assessment for the same period: tax, $1469.54, penalty, $477.64 for a total of $1947.18. At a hearing before the Commission on July 12, 1954, requested by Ambro, the latter's objections to the assessment were rejected, and the Commission made an order on September 27, 1954, confirming the assessment.

From this order Ambro appealed to the Linn County District Court and filed its petition therein on November 9, 1954, later amended, denying any liability for the tax and penalty assessed against it, except that it admitted that during the period covered by the audit involved herein it made out-of-Iowa purchases, totaling $5874, which were in fact made and consumed by it in the conduct of its business operations, so that it became obligated to pay a use tax thereon in the amount of $117.48 with such penalty thereon as might be properly fixed by the Commission. The trial court so decreed, and taxed the costs one twelfth to plaintiffs and eleven twelfths to the defendant and set aside the remainder of the tax assessment ordered by the Commission.

The case involves the Personal Property Use Tax Law, chapter 423 of the 1954 Code of Iowa, and the rules of the State Tax Commission made thereunder, particularly rule No. 76 at page 459, Iowa Departmental Rules 1954. The use-tax statutory pro-

visions of chapter 423 are closely related to the sales-tax provisions found in Division IV, Retail Sales Tax (sections 422.42 et seq., 1954 Code of Iowa).

Section 423.1(1) defines "use" thus: " 'Use' means and includes the exercise by any person of any right or power over tangible personal property *incident to the ownership of that property,* except that it shall not include processing, or the sale of that property in the regular course of business * * *." (Italics ours.)

Subparagraph (8) says " 'Person', 'commission', and 'taxpayer' shall have the same meaning as defined in section 422.42", pertaining to sales tax.

Section 422.42(9) provides: "The word 'taxpayer' includes any person within the meaning of subsection 1 [defining "person", supra], who is subject to a tax imposed by this division [IV Retail Sales Tax], whether acting for himself or as a fiduciary."

Section 423.2 fixes the rate of the use tax at two per cent of the purchase price of the property, and states: "Said tax is hereby imposed upon every person *using* such property within this state until such tax has been paid directly to the county treasurer, to a retailer, or to the commission as hereinafter provided." (Italics ours.)

Section 423.5 is: "Evidence of use. For the purpose of the proper administration of this chapter and to prevent evasion of the tax, evidence that tangible personal property was sold by any person for delivery in this state shall be prima-facie evidence that such tangible personal property was sold for use in this state."

In addition to the statutory provisions set out above, the appellant relies upon its rule No. 76 found at page 459, Iowa Departmental Rules 1954, which is:

"Rule No. 76. Advertising service. Charges for advertising in newspapers, magazines or other publications are not taxable. Likewise, charges made by advertising agencies for preparing and placing such advertising are charges for services and are not taxable.

"The tax applies, however, to gross receipts from sales of tangible personal property to advertisers or advertising agencies

for use or consumption in preparing advertising, such as paper, ink, paint, tools, office supplies and art work purchased from independent artists, engravers, charges for making metal plates, electrotypers' charges for making electrotypes or matrices and printers' charges for production of pamphlets, booklets, brochures and other printed materials.

"Advertising agents engaged in producing drawings, title to which remains in the artist, for advertising purposes are regarded as the consumers of the materials used in the performances of such services. Sales to them are retail sales, subject to the tax. Charges made by such advertising agents are not taxable.

"This rule applies to advertising agencies who solicit newspapers, magazines and other periodicals."

At page 434, Iowa Departmental Rules 1952, is the following provision:. "Division IV. Retail Sales Tax. Part I.

"Sales Tax Regulations.

"All rules are applicable to the administration of the use tax law unless otherwise indicated."

Rule No. 76 has appeared in all published rules of the State Tax Commission, relating to sales taxes and use taxes since its 1942 Rules.

In its petition in the District Court, appealing from the use-tax assessment against it, Ambro alleged: that during the period covered by the audit of the Tax Commission in the conduct of its Advertising Agency it represented numerous Iowa clients, using blank forms of the kind hereinbefore noted by which it placed their purchase orders with various suppliers of materials, both within and outside of Iowa; that in each transaction the supplier was notified that Ambro was not the purchaser, nor responsible for payment, but was acting only as the agent of the purchaser or principal whose name and address in each instance was disclosed to the supplier with direction to ship the articles ordered direct to said disclosed principal; that only in very rare instances did Ambro receive or have possession of any of the property for which it placed orders, but it was sent direct by the supplier to the disclosed purchaser; that the invoice bills were sent by the suppliers to Ambro, who placed the orders, after they had been approved by the disclosed prin-

cipal, and Ambro remitted therefor to the supplier, and was thereafter reimbursed by the client; that each purchase order contained the following directive: "Unless our name appears as 'client', we place this order as agent for a disclosed principal under specific authorization covering items ordered, hence only the client's credit is involved and client's final approval of services rendered is essential." Plaintiff also alleged: that in each instance the out-of-state suppliers knew the identity and location of the Iowa client and in each instance the Iowa client knew the identity and location of the out-of-state vendor; that the only purchaser of tangible personal property * * * was the client of plaintiffs, and that at no time did the plaintiffs possess any right or power over such tangible personal property so acquired, incident to the ownership of that property; that plaintiffs at no time owned legal or equitable title in and to any of said property, and the title and ownership thereof passed from the out-of-state vendor in each instance directly to the Iowa purchaser who was the client and disclosed principal of plaintiffs; that at no time during the period involved did plaintiffs become a purchaser, user or consumer of materials or merchandise within the meaning of the Iowa Use Tax statutes so as to be subject to the payment of taxes thereunder. The petition here lists the names of 54 of plaintiffs' clients, who, during the period involved, purchased from out-of-state suppliers various items of personal property at retail to the approximate amount of $40,000, and defendant has assessed retail use taxes against plaintiff for each and all of said purchases in the sum of $1644.99 and penalty of $534.87 and in each instance plaintiff was neither the purchaser, user nor consumer thereof, and was not subject to said assessment.

Plaintiff prayed for judgment canceling said assessment.

Defendant's answer was largely a denial of the allegations of the petition.

The District Court, on March 9, 1956, filed its "Findings Of Fact, Conclusions Of Law, Opinion and Judgment", that plaintiffs had established the allegations of their petition. The "Findings Of Fact" state:

"The record shows and the court finds that plaintiffs are a partnership operating an advertising business under the name

Ambro Advertising Agency. Generally speaking, the phase of the business involved herein consists of rendering services of a creative nature in the compiling of advertising, reports, brochures and other printed material, including the purchasing on account of its various clients from sources both in and out of the State of Iowa, of plates, paper, and supplies used in making up the finished product, arranging for the printing or production thereof, and the assembling of the various charges therefor.

"Included in every contract of employment by its clients is the provision that plaintiffs shall act as agent for the client in the procurement of supplies and services and not as vendor. In the material estimate which is usually submitted to the client in advance, the client authorizes plaintiffs to make purchases as agents. * * * The materials and supplies ordered by plaintiffs are very rarely received by them; almost invariably the merchandise is shipped direct to the printer or the client.

"The court finds, in so far as it is a question of fact, that the intention between plaintiffs and their respective clients is to create and maintain an agency relationship, wherein plaintiff will be the agent and the client will be the principal, and that in each and all of the transactions in the period involved herein, plaintiffs were in fact acting as agent for a disclosed principal."

"Conclusions Of Law"

(1) "In so far as it is a question of law, the court finds from the evidence that plaintiffs, in all dealings with suppliers, were acting as agent for a disclosed principal, the principal being the client, and that plaintiffs acquired no title to the materials, and exercised no right or power over the property incident to the ownership thereof.

(2) "That under the facts shown in the record, plaintiff agency is not a taxpayer, and not liable to pay, nor to remit, Use Tax for materials purchased from out-of-state suppliers during said audit period."

In its opinion the court states: " 'Use' means and includes the exercise of any right or power over the property incident to the ownership thereof. Section 423.1(1). From the foregoing it is apparent the real question is whether plaintiff agency 'uses' the property purchased for clients, under the above definition.

The court is of the opinion that it does not, because it never exercises any power incident to the ownership of the property. Under the undisputed facts, plaintiff does not become the owner of the property. Title thereto goes directly from the seller to the client. Plaintiff exercises no dominion over the property; does not reduce it to possession, except in very rare instances limited to photoplates. Plaintiffs do not consume the property. All that the agency does is to order the property as agent, subject to the client's acceptance, and direct the shipper as to where to send it, and to in effect advance to its clients the money to pay for it, by paying the invoices which are sent to the agent."

With respect to Commission rule No. 76, the trial court ruled:

"The court believes * * * that this rule does not impose any liability upon plaintiffs to pay or remit the tax. It says that the tax applies to receipts from sales *to* advertisers or advertising agencies for use or consumption in preparing advertising. In our case, there is no sale to Ambro. Moreover, the Rule does not purport to apply the tax to the agency rather than the advertiser, but says, in effect, that the tax applies to one or the other.

"As the court views it, the 'right or power' necessary to be exercised over the property to constitute one a 'user' thereof under section 423.1(1) is a right or power exercised by the user as an incident to his ownership in some degree of the property in question; it does not mean, and the court does not understand the Commission to argue, an exercise in passing fashion by one not the owner, of some power which might be characterized in the abstract as one of the incidents of ownership of property.

"It should perhaps be observed herein that the reason for plaintiffs' operation as agent only is so in the event of the insolvency of a client, the agency will not be caught with an indebtedness for property which has no resale value, nor possibility of recoupment from the property itself. It is a common practice among advertising agencies to so operate. There is no ruse to avoid payment of taxes. It should also perhaps be observed that no one claims in this case that a 'Use Tax' should not be paid upon the property involved. Plaintiffs contend that

this tax should be paid and remitted by the clients, and so far as the record shows, no client disputes this although several acquiesce. On the whole the court finds that since there are no provisions of the law upon which to base liability against plaintiffs to pay or remit the tax in question, the plaintiffs have carried the burden of showing that the assessment should be vacated."

It is our conclusion that the trial court's findings of fact are sustained by the record, and its conclusions of law are sound. The record establishes that the orders which Ambro placed for the merchandise involved herein were as agent for disclosed clients or principals and not for itself. Only in rare instances did any item thereof come into its possession. The out-of-state suppliers shipped the merchandise direct to the client or principal who purchased it and Ambro did not exercise any incidents of ownership therein and at no time claimed or had any title thereto. In each transaction the client received shipment of its purchases direct from the supplier and was fully informed as to its origin. Ambro, as agent, placed the orders and was negotiating medium. In accord with its agreement with each client, invoices in each transaction were rendered by the supplier to Ambro and it paid them and on so notifying the client, the latter reimbursed Ambro therefor. The record shows without dispute instances in which Ambro, in the assessment involved herein is being charged for use taxes which had previously been paid by its clients. One of these clients, the Pickwick Company, had purchased 5000 folders from Standard Printing Company of Hannibal, Missouri, for $425, and the Pickwick Company had paid the Iowa use tax on this purchase. Yet this very purchase is listed as an item subject to tax in this case, and the Commission is seeking to collect the Iowa use tax from Ambro. Another instance of attempted double taxation involves the purchase of 30 easel binders for $210 from a Milwaukee concern on May 26, 1952, by the Iowa Southern Utilities Company. This company also purchased 65,000 rate booklets from a Rockford, Illinois, supplier for $1479 on January 25, 1952. The utility company was assessed and paid an Iowa use tax on both of these transactions. The Commission has included both transactions in its audit against Ambro, yet the record shows that it at no time exercised any rights of ownership or use over these

items. The evidence also discloses that Ambro would have absolutely no use for said merchandise, nor would it have any salvage value to Ambro as it was of value to no one but the advertiser. The record also shows that these clients of Ambro recognized their liability for the use taxes on these purchases and indicated a willingness to pay them upon request of the Commission.

The controlling fact issue in this case is whether or not Ambro was acting as an agent for a disclosed principal. The fact that it was so acting is established beyond controversy. There was no evidence offered to the contrary. There is no evidence of any property right or title in Ambro to any of the property involved.

The exhibits received in evidence clearly show that all incidents of ownership of any kind or character immediately vested in the client. Ambro did not receive possession of the merchandise, nor was it responsible for its payment. It executed the orders to suppliers solely as a disclosed agent, and final approval of the merchandise shipped was wholly within the client.

The record discloses that it is the custom of agencies of the character of Ambro to operate just as it is conducted. Such advertising agencies deal exclusively in merchandise that has no intrinsic, sale, or use, value to them. What they produce can be used only by each client in the promotion of its business.

█ One of the leading authorities on the law of advertising is Morton J. Simon, of Philadelphia. In his book, "The Law for Advertising and Marketing", page 24, it is stated: "There would seem to be no legal question but that the agency is the legal agent of the advertiser. * * * [page 73] Ordinarily every disclosed principal is responsible for the authorized undertakings of his agency. This is true with the purchase of printing and other mechanicals. The name of the advertiser is almost always clearly disclosed in the purchase order."

At no time did Ambro become the owner, purchaser, user or consumer of the items purchased from out-of-state suppliers for the accounts of their clients. The contractual relationships clearly negative any and all title or ownership of any kind or character passing to Ambro.

The judgment and decree is—Affirmed.

GARFIELD, C. J., and OLIVER, WENNERSTRUM, HAYS, THOMPSON, and PETERSON, JJ., concur.