# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1907.

*(Continued from 119 Tenn.)*

CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILROAD COMPANY *v.* HAMILTON COUNTY.

*(Knoxville. September Term, 1907.)*

1. **TAXATION. County's special levy for maintenance of its circuit court is illegal.**
   A county has no authority to levy a special tax for the payment of the expenses of the circuit court. The maintenance of the circuit court is a general county purpose, and the expenses thereof must be paid out of the tax authorized by law for general county purposes. Therefore the county's assessment or levy of a special tax for the purpose of paying the expenses of its circuit court is illegal. (*Post, pp.* 3-5.)

   Case cited and approved: Newman v. Southern Railway, at Knoxville, September term, 1905.

(1)

Railroad v. Hamilton Co.

2. SAME. Illegal taxes voluntarily paid under protest before
they become delinquent, and without demand or duress, can-
not be recovered back.

A taxpayer's payment of a special county tax illegally levied and
assessed, made to the county trustee the day before it became
delinquent, and without demand therefor by the county trustee,
was voluntary and without duress, and cannot be recovered
back by such taxpayer, though the tax was paid under protest
in order to avoid the imposition of the penalty and interest,
which would accrue unless the tax was paid prior to its delin-
quency, and in order to avoid the cost and expense incident
to any attempt that the proper authorities might make under
the law to collect said tax by levy and sale of the taxpayer's
property. The tax books in the hands of the county trustee
prior to the tax becoming delinquent do not have the force and
effect of a judgment and a distress warrant; but they may have
such force and effect after the tax becomes delinquent.

Code cited and construed: Sec. 1059 (S.); sec. 926 (M. & V.).

Acts cited and construed: Acts 1873, ch. 44; Acts 1903, ch. 258,
secs. 49 and 50.

Cases cited and approved: Cauvin v. Nashville, 3 Bax., 454; Lea
v. Memphis, 9 Bax., 108; Railroad v. Williams, 101 Tenn., 148;
Bank v. Memphis, 107 Tenn., 73; Railroad v. Commissioners, 98
U. S., 541; Little v. Bowers, 134 U. S., 554; Bank v. Stone, 88
Fed. Rep., 390; Hood v. Atlanta, 107 Ga., 420; 102 Mich., 533.

Cases cited, distinguished, and approved: Bright v. Halloman,
7 Lea, 310; Railroad v. Williams, 101 Tenn., 146; Alexander v.
Henderson, 105 Tenn., 431; Bank v. Memphis, 116 Tenn.,
646.

FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County.
—M. M. ALLISON, Circuit Judge.

PRITCHARD & SIZER, for Railroad.

JOE V. WILLIAMS, for Hamilton County.

———

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this suit is to recover certain taxes said 'to have been illegally collected by the county from the railroad company for the years 1903 and 1904. The cause was presented to the circuit court on a stipulation of agreed facts, the material recitals being that in the year 1903, the county of Hamilton levied on the property of plaintiff thirty cents on each one hundred dollars in value for general county purposes, and in excess thereof made a levy of fifteen cents on the hundred dollars for the purpose of paying the expenses of the circuit court of Hamilton county. The fifteen-cent levy for circuit court purposes amounted to $1,914.08.

On the 29th day of February, 1904, the day before the tax became delinquent by law, the company paid it in order to avoid the imposition of the penalty and interest which would accrue unless said taxes were paid prior to the first of March, as provided in the assessment act of 1903, and in order to avoid the cost and expense incident to any attempt that the proper authorities might make under the law to collect said taxes by levy on and sale of its property. Said tax was paid under protest and that fact was recited in the receipt executed by the county trustee.

In the year 1904, Hamilton county again levied, in excess of and in addition to the thirty-cent levy for general county purposes, ten cents on the hundred dollars for circuit court purposes, and this levy was paid by the company on February 28, 1905, the day before the same became delinquent by law, in the same manner and for the same reason just stated for the preceding year and a receipt of the same character was executed by the county trustee, namely, "the ten-cent levy for circuit court purposes, amounting to $1,276 is paid under protest, its legality being denied."

It is also agreed in said stipulation that at the time of the payment of said taxes, no demand for payment had been made by said county or its trustee or other agent except the fact of levy and assessment as shown on the tax books in the hands of said trustee, who was, up to the time of said payments, the sole collector of said taxes.

It is insisted on behalf of the county that, upon the statement of agreed facts, it appears that these payments were purely voluntary and that plaintiff is without remedy to recover them. The circuit judge was of opinion that, "the tax was voluntarily paid for the purpose, as stated in the declaration, of saving costs, interest and penalty before it became delinquent, when no demand has been made, no threat of levy, and no delinquent list to give force of judgment or execution or distress warrant and no attempt was being made to collect it or intimation that such attempt would be made

—without even a request for payment—but voluntarily appeared and paid it, and simply had the receipt recite that this item was paid under protest.   A simple statement that a tax is paid under protest does not constitute the payment an involuntary one or reserve to payer any right of action, except as to state tax as provided by the statute."

The railroad company appealed and has assigned as error the action of the circuit judge in denying it a recovery.

It is conceded that the tax collected by the county was illegally assessed under the ruling of this court in *Newman* v. *Southern Railway,* decided at Knoxville, September term, 1905.   In that case it was expressly adjudged that the county was without authority to levy a special tax for payment of the expenses of the circuit court; that the maintenance of the circuit court was a general county purpose and its expenses must be paid out of the tax authorized by law for general county purposes and that therefore the circuit court tax was illegal.

The determinative question then arising on this record is whether the payment of these taxes by the railroad company was voluntary.

It will be observed that the Acts of 1903, chapter 258, provide as follows:

"Sec. 50.    That all the taxes remaining unpaid on the first day of March of each year shall immediately

be collected by the county trustee by distress and sale of any personal property liable therefor and the tax books in the hands of said trustee, and the delinquent lists to be furnished as herein provided, to deputy trustees or constables, shall have the force and effect of a judgment and a distress warrant, and an execution from a court of record authorizing him to make such distraint and sale."

It will be observed that the taxes for the year 1903 were paid by the company on the 29th day of February, 1904, the day preceding the first day of March of that year, on which day the taxes for 1903 would become delinquent, and it is recited that payment was made "in order to avoid the imposition of the penalty and interest which would accrue unless said taxes were paid prior to the first of March," as provided for in the section just quoted, and in order to avoid the cost and expense incident to any attempt that the proper authorities might make under the law to collect said taxes by levy and sale of the company's property.

It will be noticed that the payment was made in each year before the tax had become delinquent and at a time when no demand had been made for payment by the tax collector.  As already shown, the receipts executed by the county trustee for these taxes recite that they were paid under protest, the legality of the tax being denied.

It is very ably and earnestly argued by learned counsel for the company that, upon the facts presented, the

payment of the tax in question was involuntary and upon compulsion. It is argued that the tax books in the hands of the county trustee have the force of a judgment and that the delinquent list in the hands of deputies or constables operates to the same effect as an execution or distress warrant. It is said the statute imperatively requires that, "all taxes remaining unpaid on March first shall be immediately collected by distress and sale," and that the trustee "shall furnish the deputy with a list of delinquent taxpayers, with a description of the property assessed against each and the amount of taxes due from each." It is said that "all taxes bear interest from the first day of March of the year following that for which they are assessed," and in addition there is a penalty provided of "one per cent for each month the taxes are delinquent to be added on the first day of each month beginning with the first of March." Acts of 1903, sec. 49, chapter 258.

The position of counsel is that, in the face of these provisions of the statute, the taxpayer is not bound to wait until the penalty and costs have actually accrued against him and distress warrants have been placed in the hands of deputy trustees; but that with this condition imminent and impending, the taxpayer may pay the tax to prevent the issuance of the distress warrant, and such a payment is not voluntary, but upon coercion.

With this statement of the case we shall notice some of the authorities.

In Cooley on Taxation, at p. 566, it is said:

"That a tax voluntarily paid cannot be recovered back has been held by the authorities with very few exceptions. It is immaterial in such case that the tax has been illegally laid, or even that the law under which it was laid, was unconstitutional."

In Dillon on Municipal Corporations, sec. 942, it is said:

"Money paid by a person to prevent an illegal seizure of his property or person by an officer claiming authority to seize the same or to liberate his person or property from illegal detention by such officer, may be recovered back in an action for money had and received on the ground that the payment was compulsory, or by duress or extortion."

Again in the same work, sec. 943, it is said:

"The coercion or duress which will render a payment involuntary must in general consist of some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment, over the person or property of another, and from which the latter has no other means of immediate relief than by making payment."

In *Cauvin & Duprez* v. *Mayor and City Council of Nashville*, 3 Bax., 454, an effort was made to recover an excess of money paid the city on license for billiard tables. The court said:

"The correct principle is given in Dillon on Municipal Corporations, vol. 2, p. 857: 'The payment must have

been made on compulsion to prevent the immediate seizure of his goods or arrest of person, and not voluntary.' "

In *Lea* v. *City of Memphis*, 9 Bax., 108, it was said:

"Threats of litigation, or apprehension of the levy of distress warrants on property by the weight of authority would not make a payment of taxes under such threats or apprehensions compulsory."

In *Railroad* v. *Williams*, 101 Tenn., 148, the rule again was stated to be that a tax illegally collected might be recovered if exacted and paid under protest and to save seizure of property.

In *Bank* v. *Memphis*, 107 Tenn., 73, the suit was against the city of Memphis to recover illegal taxes paid. The court said:

"If it was paid willingly, though irregularly, and without obligation, it may not be recovered back, but if under protest and duress, it may, if it was illegally assessed and collected."

It seems to be well settled by our cases that to entitle a party to recover taxes illegally collected, they must not only have been paid under protest but under duress, that is, to prevent the seizure of goods or the detention of the person.

It is said, however, on behalf of the railroad company, that this court has decided that the tax book in the hands of the county trustee is equivalent to a judgment against a taxpayer, and that payment of an illegal tax under protest, under such circumstances, is an involuntary payment and may be recovered back.

In *Bright* v. *Halloman*, 7 Lea, 310, a suit had been instituted to recover an illegal tax collected by the county court of Obion county for the year 1877. The court said:

"It is insisted the plaintiff ought not to have recovered, because his payment was voluntary. We do not assent to this contention. The tax book was process equivalent to an execution in the hands of the officer and payment under protest entitled the party to sue for so much as was deemed illegal."

But the taxes involved in that case were delinquent, and the tax book or a copy of it, was in the hands of the constable or deputy collector when making collections.

In *Alexander* v. *Henderson*, 105 Tenn., 431; *Bright* v. *Halloman* is referred to and approved.

In *Bank* v. *Memphis*, 116 Tenn., 646, the question was whether certain taxes were paid voluntarily. The court said:

"We think this point is covered by the case of *Bright* v. *Halloman*, 7 Lea, 310. In that case it was held that the tax book was process equivalent to an execution in the hands of the officer and payment under protest entitled the party to sue for so much as was deemed illegal, and this was true, although the taxes involved were county taxes and no special provision was made for payment of this class of taxes under protest under the Acts of 1873, carried into Shannon's Code, sec. 1059." *Railroad* v. *Williams*, 101 Tenn., 146.

It is said on behalf of the county that these cases do

not apply in the present instance, since they all related
to the collection of delinquent taxes and that section 50,
of chapter 258, of the Acts of 1903, providing that the
tax books in the hands of the trustee and the delinquent
list furnished to collecting officers shall have the force
and effect of a judgment and a distress warrant, ap-
plies to taxes remaining due on March the first of each
year, as stated in that section.

As already seen, the taxes in question were not delin-
quent at the time they were paid by the company, and
as to these taxes, the tax books in the hands of the
trustee and the delinquent list thereafter to be furnished
to constables, etc., did not have the force of a judgment
and execution.    By the plain language of the statute,
these provisions only apply to taxes remaining unpaid
on the first day of March of each year.    In all of the
cases cited by counsel for the company, the taxes when
paid were delinquent.    At the time the payments were
made in the present case it is agreed, no demand for
payment had been made by the county trustee, and the
taxes were paid "in order to avoid the imposition of the
penalty and interest which would accrue unless said
taxes were paid prior to the first of March, as provided
for in the assessment Act of 1903  .  .  .  and in or-
der to avoid the cost and expense incident to any at-
tempt that the proper authorities might make, under
the law, to collect said taxes by levy and sale of its
property."

Our decisions on the subject of voluntary payment are

in accord with the ruling of the United States supreme
court. The leading case upon this question is *Railroad
v. Commissioners,* 98 U. S., 541. That was a suit to re-
cover taxes claimed to have been illegally assessed and
which were paid under protest. The opinion of the court
was delivered by Chief Justice Waite, who said:

"Before these payments were made there had been
no demand for the taxes, and no special effort had been
put forth by the treasurer for their collection. The
company had personal property in the county which
might have been seized; but no attempt had been made
to seize it, and no other notice than such as the law im-
plies had been given that payment would be enforced
in that way.

"At the time the several payments were made, the
company filed with the treasurer a notice in writing that
it protested against the taxes paid, for the reason that
they were illegally and wrongfully assessed and levied,
and were wholly unauthorized by law, and that suit
would be instituted to recover back the money paid.

"We had occasion to consider the same general sub-
ject at the last term in *Lamborn v. County Commis-
sioners* (97 U. S., 181), which came up on a certificate
of division from the circuit court for the district of
Kansas. As that was a case from Kansas, we followed
the rule adopted by the courts of that State, which is
thus stated in *Waubanasee County v. Walker* (8 Kan.,
431): 'Where a party pays an illegal demand with a
full knowledge of all the facts which render such demand

Railroad v. Hamilton Co.

illegal, without an immediate and urgent necessity therefor, or unless to release his person or property, such payment must be deemed voluntary and cannot be recovered back.  And the fact that the party at the time of making the payment files a written protest does not make the payment voluntary.' "

This, as we understand it, is a correct statement of the rule of the common law.

The following cases announce the same rule: *Little* v. *Bowers*, 134 U. S., 554; *Bank of Kentucky* v. *Stone*, 88 Fed. Rep., 390; *Hood v. Atlanta*, 107 Ga., 420.  See also 102 Mich., 533.

Affirmed.