CITY OF MEMPHIS et al., Appellant, v. W. M. S. COMPANY, INC., d/b/a BLUFF CITY CAB COMPANY, Appellee. —326 S. W. (2d) 828.

Western Section. March 17, 1959.

Certiorari Denied by Supreme Court June 5, 1959.

Rehearing Denied by Supreme Court July 27, 1959.

Frank B. Gianotti, Jr., Charles M. Crump, Frierson M. Graves, Jr., Memphis, for appellant.

Irving M. Strauch, Joe E. Jones, Memphis, for appellee.

CARNEY, J. City of Memphis appeals from a judgment of the Chancery Court of Shelby County awarding the complainant, W. M. S. Company, d/b/a Bluff City Cab Company, a judgment in the amount of $6,380.25 representing the recovery of so-called "street taxes" paid during the years 1953, 1954 and 1955.

By Ordinance No. 388, City Code 714-717, the City of Memphis purported to tax the operation of each taxicab over its streets the sum of $60 per year "for the use of the streets." In January, 1956, a number of cab companies brought suit in the Chancery Court of Shelby County, Tennessee, alleging that said city ordinance was

unconstitutional and the Chancellor enjoined the collection of said tax for the year 1956 and subsequent years. This case was appealed to the Supreme Court and in an opinion delivered by Justice Tomlinson of date December 7, 1956, the decree of the Chancery Court was affirmed and the ordinance levying the so-called street tax was held unconstitutional. See City of Memphis v. Yellow Cab, Inc., 201 Tenn. 71, 296 S. W. (2d) 864.

On February 21, 1957, solicitor for the present complainant wrote a letter to the Mayor of Memphis on behalf of several cab companies named in said letter seeking a refund of taxes paid under the invalid ordinance for the years 1953, 1954 and 1955. A copy of said letter is as follows:

"Law Offices

"Strauch & Jones

"Eighty-one Madison Building

"Memphis 3, Tennessee

"Irving M. Strauch

"Joe Jones "February 21, 1957

"J. Richard Cox

"Honorable Edmund Orgill

"Mayor of Memphis

"Court House

"Memphis, Tennessee

 "Re: Refund of taxes illegally collected

"Dear Mayor Orgill:

 "We represent the following colored taxicab companies in the city of Memphis, namely:

"Bluff City Cab Company

DeLuxe Cab Company

Friendly Cab Company

Littlejohn Taxi Service, Inc.

Orange Mound Taxicab Company

Safety Cab Company

Southside Taxi Company, Inc.

"Each of these companies has heretofore, in compliance with Municipal Ordinance No. 388 (Code Sec. 714), paid the sum of Sixty and no/100 ($60.00) Dollars per year for each taxicab operated during the years 1953, 1954 and 1955.

"As you know, these taxes were paid involuntarily and under compulsion, in that if they were not paid they could not operate on the streets of Memphis.

"Since our Supreme Court has ruled that this Ordinance is invalid and illegal, we are, therefore, on behalf of our clients, demanding that the tax which they have paid, under this void Ordinance, for the years 1953, 1954 and 1955, be returned to them.

"I am enclosing with this letter a detailed list of the sums claimed by each company.

"We are sending a copy of this letter to Mr. Gianotti, head of the City Legal Department, so that we may properly protect our clients' interests.

"Thanking you for your kindness and consideration, we remain

"Most cordially yours,

"Strauch & Jones
"/s/ Irving M. Strauch
"Irving M. Strauch

"IMS-bsk

"Enclosure

"CC: Honorable Stanley Dillard
"CC: Honorable Frank B. Gianotti, Jr.
"CC: Honorable Sloan O. Craig"

The City of Memphis refused to make the refund and on March 13, 1957, the present suit was brought in behalf of the one complainant, W. M. S. Company, Inc., d/b/a Bluff City Cab Company.

The original bill did not aver that said taxes for the years 1953, 1954 and 1955 had been paid under protest but merely averred that the taxes were paid "involuntarily and under the duress and coercion of the defendants and to avoid complainant being required to quit business; that, if they had not paid said tax, it would have amounted to a forfeiture of its right to carry on its business and that said payments were involuntary and under compulsion;" that the Supreme Court had ruled the ordinance unconstitutional and that therefore the complainant was entitled to recover said taxes paid under the void ordinance. The defendant contended that the payments were voluntary, not made under protest, and that the complainant had adequate remedies at law and in equity to contest said tax before payment.

From the Chancellor's oral opinion we quote as follows:

"Now, in the opinion of the Court, the issues of this case may be determined upon proof which is

completely uncontradicted in this record. It is not the Court's understanding of the law that, before a recovery of these taxes unlawfully collected may be had, a tax receipt must be marked 'paid under protest' or that the check which paid the tax complained of must be marked 'paid under protest', or that there need be any written evidence whatever that a municipal tax, such as before the Court, sought to be collected back from the collecting authority, must be paid 'under protest,' or any need that it be earmarked 'paid under protest.'

"It is the Court's opinion, based upon the cases of Railroad v. Williams, 101 Tenn. 146 [46 S. W. 448]; Cincinnati [N. O. & T. P.] Railroad Company v. Hamilton County, 120 Tenn. 1 [113 S. W. 361]; Quick Service Tire Company v. Smith, 156 Tenn. 96 [299 S. W. 807]; citing [St. Louis] Basket and Box Company v. Lauderdale County, 146 Tenn. 413 [241 S. W. 99]; and Bell v. Clay County, 168 Tenn. 6 [73 S. W. (2d) 685], that if the tax was involuntarily paid, that suffices the complainant to maintain his suit to recover taxes allegedly unlawfully collected from him.

"It seems to be the law in the State of Tennessee that if a tax is paid before its due date, it cannot be said to be paid under compulsion or involuntarily paid.

"The question the Court must decide in this case is whether or not the tax was paid before its due date. The City Ordinance, section 714, states the due dates of the tax as the 20th days of July and January of each year. However, in so far as this particu-

lar subject is concerned and in so far as the complainant in this particular cause is concerned, it is uncontroverted that by postcards mailed December 30, 1952, 1953 and 1954, the complainant was advised as follows: 'You are hereby notified that your city license to exercise the privilege of * * *'—and it refers to the taxicab tax applicable under section 714 of the Memphis Municipal Code—is 'due the first day of January, 1953'—in other words, the City through its tax authorities has taken upon itself the right to advise the complainant that its tax, collectible under section 714, was due on the first day of January, 1953, with respect to one of these cards and January 1, 1953, etc., with respect to the others.

"The Court rules that the same is true with the other years in dispute. I don't see how this complainant could receive this card and consider other than that after the first day of January of each year, if he hadn't paid his tax by that time, he was subject to having his business stopped by operation of law for failure to pay this tax."

The ordinance declared void by the Supreme Court and under which the taxes in controversy were paid reads as follows:

"714. *Tax on taxicabs for use of streets — Required: amount: to be paid semiannually.* — Every person operating a taxicab upon any street, alley or other public thoroughfare in the city, shall pay to the city, in addition to all other payments required under existing laws, ordinances and regulations, the sum of sixty dollars per year for each taxicab so operated, as compensation for the use of the streets, alleys and

other public thoroughfares of the city. The payment of such annual sum of sixty dollars shall be paid semi-annually on the twentieth day of July and January of each year, to the collector of licenses and privileges of the city. (Ord. No. 388).''

In addition to the street tax above referred to the city of Memphis also levied and collected a regular privilege tax of $15 per annum for each taxicab as authorized by T. C. A. sec. 67-4203, Item 8(g).

By ordinance no taxicab can operate in the City of Memphis without a Certificate of Public Convenience and Necessity to be issued by the Commissioner of Public Service of the City of Memphis. Section 717 of the Municipal Code provides that failure to pay the street tax under Section 714 quoted above constituted additional grounds for revocation of the Certificate of Public Convenience and Necessity.

Even though the ordinance provided that the street tax would be due on the 20th of January and July each year, the license collector of the City of Memphis made a practice of sending a postcard on or about December 30th to the various taxicab operators notifying them that the street tax of $30 and the privilege tax of $15 on each taxicab was due and payable as of January 1st each year and again he sent out a notice on or about June 30th notifying such taxicab operators that the $30 semi-annual street tax was due and payable on July 1st each year.

All of the payments of the street tax which the complainants seeks to recover in the present case were paid before the 20th of January and the 20th of July except

three payments totalling $840.75 which were paid after said dates.

The president of the complainant, Lester A. Snell, testified that he had been in the taxicab business in Memphis, Tennessee, since 1945 and that he owned all of the capital stock of the parent corporation except two shares out of something over nine hundred shares; that he personally attended to paying most of the taxes of the corporation. The president further testified that if his company had not paid the street tax of $30 each January and July the city license collector would have taken his cabs off the street and refused him permission to operate and that on one occasion one of the taxicabs was taken off the street for failure to pay the street tax.

He further testified that all of the street taxes paid during these years were paid involuntarily and under compulsion. He further testified that his company had been paying the street tax since 1945 and that he never really did understand what it was for.

The nearest thing to testimony that the taxes were paid under protest is to be found in the following testimony by President Snell:

"Q. Why didn't you pay it on the 1st as you were demanded and called on to by the City? A. Because we always protested because we didn't know what it was for.

"Q. Who did you protest to? A. Mr. White.

"Q. Did you protest on one or more occasions? A. He said if we didn't pay, he would pull our cabs off the street.

"Q. Why didn't you protest in 1953 before paying this tax? A. In 1945 the manager of one of the cab companies come out of the Army—(interrupted)

"Q. You can't testify what somebody told you. Answer my question if you can. A. We tried to get the negro taxicab companies together to protest the tax, and we were never able to get them together.

"Q. Now, when this suit was eventually brought —Do you know when the suit was brought? A. In 1956.

"Q. Were they together then? A. They were gotten together.

"Q. Let me ask you something, you have testified in 1953, 1954 and 1955—(interrupted) The Court: You were talking about the suit of the Yellow Cab Company? A. That's right, Your Honor. The Yellow Cab Company got them together.

"Q. The Yellow Cab Company got them together? A. Yes, sir, they could do more with our people than we can."

Officials of the City of Memphis testified that none of the taxicabs of the complainant were ever ordered off the street for non-payment of street taxes.

We copy herein one of the postcard notices sent out by the City of Memphis to the complainant, Bluff City Cab Company. This postcard was addressed to Bluff City Cab Company, Memphis, Tennessee, postmarked December 30, 1952, and the reverse side partially printed with blanks filled in in pen is as follows:

"Office of City License Collector
"ROOM 202 COURT HOUSE
MEMPHIS, TENNESSEE

"You are hereby notified that your City License to exercise the privilege of

| "35 Taxicabs 35 @ 15.00 | $ 525.25 |
|---|---|
| 35 @ 30.00 | 1050.25 |
| TOTAL | $1575.50 |

"due the 1st day of . . . . . . . . 195 . . .

| | |
|---|---|
| "Please call at once or mail your remittance immediately to cover this tax, otherwise penalties will accrue. | "Make checks payable to<br>F. M. WHITE<br>"Collector of Licenses and Privileges |

"IMPORTANT—BRING THIS CARD WITH YOU OR MAIL WITH YOUR REMITTANCE"

█ We concur in the finding of the learned Chancellor that the payments made by the complainant pursuant to the postcard notices were made after the taxes became due even though the ordinance itself made said taxes due January 20th and July 20th respectively. The receipts issued by the City for the payment of said street assessment on each taxicab recited that the assessment was paid for the six-month period ending the last day of June or the last day of December as the case may have been. Under these circumstances we think the City is estopped to contend that the taxes were paid before they became due. No distress warrants were ever issued for collection of any of the "street taxes." Therefore, assignments of error 3 and 4 are respectfully overruled.

Assignment of error 1 and 2 insist that the Chancellor was in error in finding that the said payments were made under compulsion and involuntarily even assuming the taxes did become due on January 1st and July 1st each year respectively.

Provision is made by statute for the recovery of erroneous and illegal tax payments to the State of Tennessee. We quote said sections as follows:

"67-2303. Payment of tax under protest.—In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due, by said officer, from any citizen, the person against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or clause of the Constitution of the state, pay the same under protest. (Acts 1873, ch. 44, sec. 1; Shan., sec. 1059; Code 1932, sec. 1790.)

"67-2304. Notice of protest.—Upon his making such payment, the officer or collector shall pay such revenue into the state treasury, giving notice at the time of payment to the commissioner of finance and taxation that the same was paid under protest. (Acts 1873, ch. 44, sec. 1; Shan., sec. 1060; Code 1932, sec. 1791; Impl. Am. Acts 1937, ch. 33, sec. 50.)

"67-2305. Action against collecting officer.—The person paying said revenue may, at any time within thirty (30) days after making said payment, and not longer thereafter, sue the said officer having collected

said sum, for the recovery thereof. (Acts 1873, ch. 44, sec. 1; Shan., sec. 1061; Code 1932, sec. 1792.)''

However, it has been held that these sections do not apply to recovery of illegal tax payments made to a county or municipality. Swift & Co. v. State, 1932, 165 Tenn. 256, 55 S. W. (2d) 267; Bell v. Clay County, 1933, 168 Tenn. 6, 73 S. W. (2d) 685.

We are cited by neither party to any other statutory provisions regulating the recovery of taxes illegally paid to counties or municipalities. At common law protest at time of payment was a condition precedent to the recovery of a tax alleged to have been illegally exacted. 51 Am. Jur. on Taxation, page 1020, sec. 1189, entitled "Payment under Protest."

In Railroad v. Williams, 1898, 101 Tenn. 146, 46 S. W. (2d) 448, the court allowed the recovery of taxes illegally assessed and collected by the city and county. The facts are not fully developed in the opinion as to the nature of the duress under which the complainant labored but the opinion does recite that the taxes were paid under protest.

In the case of Railroad v. Hamilton County, 1907, 120 Tenn. 1, 113 S. W. 361, the county had levied illegally for the year 1903 a special tax for the payment of the expenses of Circuit Court. The plaintiff Railroad owned property in Hamilton County which was subject to said levy and on February 29, 1904, the day before the tax became delinquent by law, the company paid the illegal tax in order to avoid the imposition of penalty and interest which would accrue on said assessment after March 1, 1904, and in order to avoid cost and expenses incident

to an attempt by the proper authorities to collect for the tax by levy on and sale of the property. It is to be noted that in this case the railroad paid the taxes under protest and the receipt executed by the trustee so recited.

Again in 1904 the same illegal tax was levied and assessed and again on February 28, 1905, the plaintiff paid the illegal tax under protest for the same purposes above set out. The court reviewed a number of prior cases and reannounced the general rule as follows: "It seems to be well settled by our cases that to entitle a party to recover taxes illegally collected, they must not only have been paid under protest but under duress, that is, to prevent the seizure of goods or the detention of the person." Recovery of the illegal taxes was denied.

In the case of Nashville, C. & St. L. Railroad Co. v. Marion County, 1907, 120 Tenn. 347, 108 S. W. 1058, 1059, the Railroad brought suit to recover the sum of $927.27 paid under an illegal assessment for the year 1904. The tax was paid on February 23, 1905, under protest, and no demand had been made for the payment of said tax by any county official. By statute the taxes became due and payable on the first Monday in October, 1904, and became delinquent on March 1, 1905. From said opinion we quote as follows:

"Before we can hold a payment of taxes involuntary, it must appear that the officer had in his hands process authorizing the seizure of the person or property of the taxpayer, that such seizure of one or the other was imminent, and that there were no other legal means of protecting the person or property than by payment. Under such circumstances payment under protest will save the rights of the

taxpayer to recover if the tax should be illegal. Mere protest is not sufficient. Mere unwillingness to pay is not sufficient.''

In Atlas Powder Co. v. Goodloe, 1914, 131 Tenn. 490, 175 S. W. 547, 550, the complainant sought to be legally authorized to do business in Tennessee as a foreign corporation and made application therefor to the Secretary of State as required by law. The Secretary of State declined to issue the necessary certificate of incorporation until complainant paid an additional sum of $1500 as an entrance tax provided for by chapter 504 of the Acts of 1909. The complainant formally protested to the Secretary of State and insisted that the demand was illegal and wrongful and that the law was unconstitutional and yet in order to prevent a heavy loss of business, it paid the Secretary of State the sum of $1500 under protest and reserved the right to sue to recover the same and to have the law declared unconstitutional. The Supreme Court held that the entrance tax was paid under circumstances amounting to duress and that the complainant had a right to pay the tax under protest and later bring suit to recover. However, the Court denied recovery and upheld the validity of the tax. From said opinion we quote as follows:

"We are inclined to the view that the corporation in this case can make the question of the right of the state to exclude it without first proceeding to undertake business in defiance of the statute, and waiting for the state to bring proceedings in the nature of quo warranto against it, calling upon it to show cause by what authority it attempts to do business in Tennessee. Such a course of action by complainant

would be a flagrant disregard of the statute and a defiance of the authority of the state, and would also subject all its contracts within the state to attack, and render them illegal and void. Being in the attitude of either paying the tax or rendering its contracts void, we believe there was such duress under the authority of Gaar, Scott & Co. v. Shannon [223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510], and Atchison, etc., Ry. Co. v. O'Connor, supra [223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436], that its payment of the tax was not voluntary. Complainant would have its right of mandamus, it is true, but in the meantime its factory in Tennessee would necessarily have to remain idle, and its other properties in the state could not be utilized. Its business would be greatly crippled and hindered, thereby entailing financial loss, while its rights were being litigated in the courts.

"It occurs to us that to thus require it to go through the various courts necessary to finally test the law and meanwhile compel its properties to stand in idleness and suffer loss would be even greater duress than the levying of a distress warrant or other process against its property by the state to collect the tax.

"It would seem to be more reasonable to allow it to pay the tax under protest and then sue to recover back, as it has done, than to require it to suffer the loss indicated.

"The case of [Nashville, C. & St. L.] Railroad [Co.] v. Marion County is not in point. In that case there was no impending loss to the taxpayer until

the officers for the collection of the taxes took action to collect by process of law and the property about to be seized or sold for payment of the tax. We therefore hold that the complainant may test its rights in the present suit, and we proceed to consider the merits of the litigation."

In St. Louis Box and Basket Co. v. Lauderdale County 1922, 146 Tenn. 413, 241 S. W. 99, 100, Lauderdale County had made an illegal assessment against the timber lands of the complainant Basket Company located in Lauderdale County, Tennessee, for the year 1920. On May 9, 1921, the complainant Box and Basket Company paid the assessment under protest and brought suit in the Chancery Court for the recovery of the illegal taxes. By the provisions of chapter 602 of the Acts of 1907 under which the assessment was made the tax became process equivalent to an execution after March 1st each year and as to the 1920 taxes by provisions of chapter 20 of the Acts of 1921 the tax book became such process after May 1, 1921. In said opinion Justice Green said "So when this payment was made by the complainant, it stood in the attitude of a debtor to the state and county against whom judgment had been rendered and an execution had been issued." Held: the payment under such circumstances constituted a payment under duress.

In the case of Prescott v. City of Memphis, 1926, 154 Tenn. 462, 285 S. W. 587, 48 A. L. R. 1378, a bill was filed to recover taxes assessed and collected by the City of Memphis for the years 1920, 1921, 1922 and 1923. The suit was predicated upon the fact that the act of the Legislature annexing the complainant's property to the City of Memphis was void because of certain defects in the

caption thereof. Hence the assessment of the taxes was void. The City interposed a demurrer. The Chancellor sustained the demurrer of the City of Memphis on the grounds that the taxes appeared to have been voluntarily paid though under the mistake of law that said taxes were legally assessed. On an appeal the Supreme Court of Tennessee affirmed the Chancellor.

In Quick Service Tire Co. v. Smith, 1927, 156 Tenn. 96, 299 S. W. 807, the Chancellor awarded recovery for county and state taxes which were illegally exacted and which were paid by the complainant under protest. The facts in that case reveal that the taxpayer had been illegally assessed and after discussion the State Comptroller had adjudged him to be liable for the tax and the matter had been turned over to the County Court Clerk for collection. The County Court Clerk had authority to collect delinquent taxes by distress warrant and had by letter notified the complainant to pay the illegal assessment. Thereupon the complainant addressed a letter to the County Court Clerk with a check to cover the tax demanded saying: " 'we want it clearly understood that this tax is paid under protest and duress because we are advised by you that such is delinquent, and unless it is paid, process which you hold in your hands will be levied upon the company to seize sufficient of its property to pay said tax, and that there is no legal means of protecting our property except payment under protest. We, therefore, pay without prejudice to our right to bring suit under Section 1061 of Shannon's Code.' "

In the case of Bell v. Clay County, 1933, 168 Tenn. 6, 73 S. W. (2d) 685, the Supreme Court allowed recovery of a privilege tax paid by the complainant to the Clerk of

the County Court even though the assessment had never been made and no officer of the county was claiming that the complainant was liable for such privilege tax. However, the peculiar circumstances of that case were that the complainant had pending a civil suit for a substantial sum of money, many times larger than the amount of the privilege tax paid, and his adversary was defending the civil suit on the grounds that the complainant had failed to pay the particular privilege tax to the defendant Clay County. The court in the opinion recognized the rule announced in Still v. Equitable Life Assurance Society, 165 Tenn. 224, 54 S. W. (2d) 947, 86 A. L. R. 382, that the payment of a sum of money to avoid the hazard of a disproportionately larger sum is sometimes treated as an involuntary payment, made under duress, so that a suit to recover the sum paid may be maintained. The court allowed a recovery of the money paid.

We have not found any case in Tennessee allowing recovery of taxes illegally collected, where the tax had not been paid under protest. We think the record preponderates against a finding of payment of the taxes under protest in this case.

 Complainant first started paying the tax in 1945. For eleven consecutive years the street tax was paid by complainant without any suit being filed and without any attempt on complainant's part to get the City to cease attempting to collect the tax. At no time did the complainant ever make any objection to any city official that the tax was illegal or that the City did not have the right to collect the tax. Complainant's president merely protested against the payment of taxes in general. This was not sufficient. Complainant's officials were obliged to

protest and object to the legal right of the City to collect the particular tax sought to be collected.

"In the absence of any statutory modification permitting recovery, the well established principle of law that a voluntary payment made under a mistake of law, but with a knowledge of all the facts, cannot be recovered is generally held to preclude one who voluntarily pays a tax imposed by an unconstitutional law without knowing that the law is unconstitutional, from recovering the amount so paid." 51 Am. Jur. Taxation, page 1024, sec. 1193.

We think the evidence shows that the complainant paid the street tax for eleven years without protest under the mistake of law that the tax was valid and that the complainant had no legal way to avoid the payment of said tax.

Hence, we feel constrained to hold that the street taxes paid for the years 1953, 1954 and 1955 were paid voluntarily and not under duress and that His Honor the Chancellor was in eror in awarding a recovery therefor.

Assignments of error 1 and 2 are therefore sustained.

A decree will be entered reversing the judgment of the court below and entering a judgment in favor of the defendant. The costs will be adjudged against the complainant, W. M. S. Company, Inc.

Bejach, J., concurs.

Avery, P. J. (Western Section) dissents.

Avery, Presiding Judge (W. S.), dissenting.

I am of the opinion that the Decree of the Chancellor in the above styled cause is correct.

I agree with the majority Opinion to the extent that it concurs with the Opinion of the Chancellor that the notice which was sent to the Taxicab Companies in question, advising them that the tax to be paid under the Ordinance in question, was due on the first day of July and the first day of January in each year, and that these notices, together with the receipt issued, constitute an estoppel on the part of the City to contest the rights of these taxicab owners on the theory that the payments were not due until the 20th of each January and July.

It must be remembered that the Ordinance was absolutely void and not merely voidable. Being so, it had no effect and the notice from the City constitutes the information relative to the due date of such tax. A copy of the notice is set out on page 7 of the Majority Opinion and within it, after setting out the amount of the tax alleged to be due on the cabs, is contained the following statement:

"Please call at once or mail your remittance immediately to cover this tax, otherwise penalties will accrue."

The learned Chancellor in his Opinion said:

"The Court rules that the same is true with the other years in dispute. I don't see how this complainant could receive this card and consider other than that after the first day of January of each year, he was subject to having his business stopped by operation of law for failure to pay this tax."

It must be remembered, as reflected by the record, that the City Commissioners of the City of Memphis constitute the only authority for granting the certificate of convenience and necessity, and that they have the same powerful authority within the city limits and certain areas around that limit, as the Public Service Commission has in the State of Tennessee; that certificates had been issued to the taxicab companies in question, which were subject to revocation upon failure to pay the tax levied by the void Ordinance, and further that operation without a certificate upon the streets of Memphis subjects the operator to a fine for such violation.

Under the circumstances as shown by the record, it seems clear to me that this tax was paid under duress and that the Chancellor was correct in his construction and application of the cases decided by the Supreme Court and referred to in his Opinion as the basis for his conclusions.