**S & M FINANCE COMPANY FORT DODGE, Iowa, Appellee,**

v.

**IOWA STATE TAX COMMISSION, E. A. Burrows, Jr., Lynn Potter and X. T. Prentis, Members Thereof, Appellants.**

No. 52975.

Supreme Court of Iowa.

Nov. 12, 1968.

Rehearing Denied Jan. 13, 1969.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., and Harry M. Griger, Asst. Atty. Gen., for appellants.

Mitchell, Mitchell & Murray, Fort Dodge, for appellee.

LeGRAND, Justice.

This is a de novo appeal challenging a decree holding certain sales of personal property exempt from the imposition of sales tax under chapter 422, Code of Iowa.

Plaintiff, an Iowa corporation, has for many years engaged in the business of making loans secured by liens on personal property. Defendants are the Iowa State

Tax Commission and its individual members. In this opinion we refer to the defendants jointly as the commission.

The facts are substantially without dispute. The controversy centers around the sale by plaintiff of its loan security—which in every case was a motor vehicle—upon default in payment by the borrower. When default occurred, plaintiff took possession of the security under the terms of the loan agreement. Sometimes this was in the nature of a conditional sales contract, sometimes a chattel mortgage. If necessary, the property was reconditioned or repaired. It was then advertised for sale, and ultimately a sale was made. The proceeds were applied, first, to pay off the loan balance and the costs of sale. If there remained any surplus, it was paid over to the borrower. In no case did plaintiff make a profit on such sale; nor, under its loan contract, could it do so.

Prior to 1943 plaintiff had a retail sales tax permit and made quarterly returns, as required by section 422.52, Code of Iowa. Sometime in 1943 plaintiff surrendered its sales tax permit and thereafter did not make sales tax returns. This method of operation continued from 1943 until 1965 without objection from the commission. At that time a field representative of the commission, while auditing plaintiff's records for other purposes, came across the data concerning these motor vehicle sales. Thereafter plaintiff was asked to furnish all information regarding sales of motor vehicles from July 1, 1960, through March 31, 1965.

Based upon information furnished by plaintiff, the commission assessed a tax or $2264.48, plus penalty of $245.66, for unpaid and delinquent sales tax accrued during the period under investigation. Not all sales made by plaintiff during that time were included in the assessment. The commission excluded all sales to wholesalers and certain other transactions and included only those made to buyers who qualified, in the commission's opinion, as "consumers or users" under section 422.43, Code of Iowa. Plaintiff admits that only sales to ultimate consumers were included in the assessment. Plaintiff appealed to the district court of Webster County, which reversed the commission on two grounds: (1) That the sales were not retail sales under section 422.42 (3), Code of Iowa; (2) That the sales were casual sales and exempt from sales tax under section 422.45(6), Code of Iowa.

From this decree the commission appeals to us. We reverse and hold plaintiff is liable for the tax assessed by the commission.

 I. We disagree with the trial court's conclusion the sales were not sales at retail. This question depends upon the construction placed on section 422.42, which defines various terms used with reference to sales tax liability. It is, of course, axiomatic that these legislative definitions are binding on us. W. J. Sandberg Co. v. Iowa State Board of Assessment and Review, 225 Iowa 103, 107, 278 N.W. 643, 645, 281 N.W. 197; Iowa State Commerce Commission v. Northern National Gas Company, Iowa, 161 N.W.2d 111, filed September 5, 1968.

Section 422.42 contains these definitions:

" * * * 2. 'Sales' means any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration.

"3. 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for processing or for resale of tangible personal property."

 In section 422.43 as of the dates material to this appeal we find this, "There is hereby imposed, beginning the first day of April, 1937, a tax of two percent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the state to consumers or users. * * *" We hold the transactions in question fall

**508**

directly within the provisions of these statutes. Certainly these were transfers of tangible personal property for a consideration; and just as certainly they were not made for processing or for resale. Under that factual situation the sales were retail sales. W. J. Sandberg Co. v. Iowa State Board of Assessment and Review, supra; Des Moines and Central Iowa Railway Company v. Iowa State Tax Commission, 253 Iowa 994, 998, 115 N.W.2d 178, 181; Schemmer v. Iowa State Tax Commission, 254 Iowa 315, 319, 117 N.W.2d 420, 422.

■ Plaintiff argues we should look to provisions in the Uniform Commercial Code, and the law as it existed prior to the adoption of that code, and to chapters 321 and 322, Code, for certain definitions which exclude the sales here in question from the taxable provisions of chapter 422. Without passing upon whether there is any statutory inconsistency, we hold our answer here must be found within the provisions of chapter 422, which specifically defines what is taxable, imposes the tax, and provides for its collection.

We hold these transfers were sales at retail under section 422.42(3), Code of Iowa.

II. Neither can we agree these transactions were casual sales and therefore exempt under section 422.45(6), which excludes from the provisions of the sales tax the gross receipts from casual sales. Section 422.42(13) defines casual sales as follows:

" 'Casual sales' means sales of tangible personal property by the owner of a nonrecurring nature, if the seller, at the time of sale, is not engaged for profit in the business of selling tangible goods or services taxed under section 422.43." Both section 422.45(6) and section 422.42(13) became effective by amendment May 21, 1963. Prior to that time there was no exemption for casual sales. In Des Moines and Central Iowa Railway Company v. Iowa State Tax Commission, 253 Iowa 994,

115 N.W.2d 178, decided in 1962, we held a rule of the commission attempting to exempt casual sales from the tax was invalid. Subsequent to this decision, and perhaps because of it, the legislature amended the act to exempt casual sales from tax.

At best, then, plaintiff's argument that the sales in question were casual would apply only after May 21, 1963. It would not relieve the plaintiff of any tax based on sales prior to that time.

■ This becomes unimportant in view of our conclusion the sales were not casual under the statutory definition. The evidence shows plaintiff sold approximately 50 cars each year. This figure varied from year to year, depending upon the number of defaulted loans, but testimony fixed the figure at an average of 50 per year. Plaintiff contends the sales were casual because it was not in the business of selling automobiles for profit; it is a finance company and sells automobiles only to prevent loss on bad loans.

The statutory definition of casual sales requires that two conditions be met. We assume, although we do not hold, that plaintiff is not engaged in selling tangible goods for profit as part of its business. Nevertheless we hold these transfers were not casual sales because plaintiff cannot satisfy the second requirement of the definition —that the sales be nonrecurring. Webster's New International Dictionary, Second Ed., defines recur as to "occur, take place, or appear again." Synonyms listed are return, repeat, reoccur and reappear.

■ In construing section 422.42(13) we give the words used their usual and ordinary meaning. We also adhere to the rule that the plain, obvious meaning is always preferred over one which is strained and artificial. Bruce Motor Freight, Inc. v. Lauterbach, 247 Iowa 956, 970, 77 N.W. 2d 613, 621.

■ An exemption statute is strictly construed against the taxpayer, who has the burden of proving clearly that he comes

within its provisions. Fischer Artificial Ice Company v. Iowa State Tax Commission, 248 Iowa 497, 499, 81 N.W.2d 437, 439, and citations. Plaintiff has failed to meet that burden here.

It would indeed take a "strained and artificial" interpretation of the statute to say these were nonrecurring sales when they occurred over a long period of time on a once-each-week average.

We conclude the sales in question were not casual sales within the provisions of section 422.42(13) and are therefore not exempt under section 422.45(6).

III. The third ground urged by plaintiff relates to equitable estoppel and is based on certain representations allegedly made by the commission and one of its field representatives in June of 1943.

■■ We should probably mention first that estoppel is not plead and could not therefore ordinarily be relied upon by plaintiff. 31 C.J.S. Estoppel § 153(1), page 743; Reed v. Bunger, 255 Iowa 322, 336, 122 N.W.2d 290; Alexander v. Randall, 257 Iowa 422, 427, 133 N.W.2d 124. However, the commission concedes in its reply brief this doctrine was submitted without objection as an issue before the trial court and we therefore consider it as though it were properly raised. Markman v. Hoefer, 252 Iowa 118, 123, 106 N.W.2d 59, 63, and citations.

It is necessary that we give a brief background of the facts which are said to create an equitable estoppel. In 1943 a commission field representative advised plaintiff no sales tax was due on sales of repossessed motor vehicles. Plaintiff thereupon surrendered its sales tax permit to the commission.

The same day, June 23, 1943, plaintiff wrote the commission with reference to a particular sale of a repossessed motor vehicle to one of its employees. In that letter was this paragraph:

"Incidentally, Mr. Chas. H. Eaton, Investigator for your Department, was in our of-

fice today and, after explaining the setup to him, we have cancelled out our Sales Tax Permit. We have made quarterly reports but we had no sales subject to tax, since the law was changed providing for the collection of the Use Tax at the time of registration."

The commission replied the following day. Here, except for the formal parts, is the commission's letter:

"Dear Sir: Re: 1936—Dodge Conv. Sed. 94–S–9036

"This letter will acknowledge receipt of yours of the 23" instant in regard to the use tax on the above car.

"We understand that this is a repossessed car, which later was sold to an employee of your company for his own use.

"For your information we are enclosing a book of Rules and Regulations in respect to the collection of Use Tax by county treasurers. On pages five and six we have marked the rules which apply to finance companies selling repossessed cars, which we believe clearly explain the case in question.

"We feel sure that you will agree with us, after reading these rules, that two percent of the purchase price paid by your employee should be collected and paid to the county treasurer, who will issue you our regular receipt for the same.

"Any further information that you desire kindly call on us and we will do our best to clarify the matter.

"We are forwarding a copy of this letter to your county treasurer."

Plaintiff relies heavily on this exchange of letters, but we see nothing there to support the claim of estoppel. Far from saying anything from which plaintiff could infer it had no tax liability, the letter specifically found liability to exist as to the only transaction concerning which inquiry was made. The fact that it was a use tax rather than sales tax is unimportant. Other

than that the letter simply referred plaintiff to the commission's rules as to use tax regulations. Nothing was said about sales tax liability.

If there is estoppel, it must be found in what Mr. Eaton told the plaintiff and not in the correspondence between plaintiff and the commission.

■ Equitable estoppel is based on the idea that one who has made certain representations should not thereafter be permitted to change his position to the prejudice of one who has relied thereon. It is resorted to when otherwise manifest injustice would result. Sanborn v. Maryland Casualty Co., 255 Iowa 1319, 1327, 125 N.W.2d 758, 763, and citations; 28 Am.Jur.2d, Estoppel and Waiver, section 27, page 627, section 28, page 629. It is not generally invoked against the state, particularly when the collection of revenue is involved. 28 Am.Jur. 2d, Estoppel and Waiver, section 122, page 783, section 123, page 783, 31 C.J.S. Estoppel § 138, page 675, § 140, page 690, § 147, page 730; Annotations, 1 A.L.R.2d 344. See also Alexander v. Randall, 257 Iowa 422, 427, 133 N.W.2d 124, 127, although that case involved a municipal corporation rather than the state. However, some courts have held there is no good reason of public policy why, when the elements of equitable estoppel are present, the taxpayer should not be allowed to rely on it against the state to the same extent as if his controversy were with an individual, particularly where the taxpayer merely collects and remits to the state for a tax which he is permitted or required to pass on to another. In such cases a later determination of tax liability which contradicts a previous opinion compels the taxpayer to pay from his own funds a tax he could have collected from others except for the erroneous representation.

We need not decide, and we do not, under what circumstances equitable estoppel might be exercised against the state in tax matters because the facts here would not warrant such a result under any of the authorities. However, for a general treatment of the problem see 31 C.J.S. Estoppel § 147, page 733; 48 Harvard Law Review 1281, 1299, 1308; United States Fidelity and Guaranty Company v. State Board of Equalization, 47 Cal.2d 384, 303 P.2d 1034, 1037, 1038 and cases cited therein.

■ There are various definitions of equitable estoppel, but all involve the element of a party's right to rely upon the representation made. 31 C.J.S. Estoppel § 59, page 367; 28 Am.Jur.2d, Estoppel and Waiver, section 27, page 627; Sanborn v. Maryland Casualty Company, 255 Iowa 1319, 1327, 125 N.W.2d 758, 762, 763. The rule is stated in 28 Am.Jur.2d, page 627, as follows: " * * * The principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon * * *."

■ We have recognized these same elements as essential to the doctrine. Sanborn v. Maryland Casualty Company, supra. As applied to the situation now before us, how can it be said plaintiff could "rightfully rely" upon the statement made or was "excusably ignorant of the true facts"? Not only was any statement by the field representative concerning non-liability contrary to the plain language of the statute (as we point out in Divisions I and II), but it also violates commission Rules 23, 207, 208, and 209, I.D.R., all of which relate in one way or another to the taxability of sales of repossessed goods. The commission itself is powerless to adopt rules inconsistent with, or in conflict with, the law to be administered. It may neither impose a tax nor grant an exemption. We take it an employee has no greater power than the commission. Des Moines and Central

Iowa Railway Company v. Iowa State Tax Commission, 253 Iowa 994, 999, 115 N.W.2d 178, 181, and citations.

Furthermore, as bearing on plaintiff's right to rely on the statements made, we mention that nowhere is Mr. Eaton's authority shown. The record neither shows the nature of his work nor the extent of his authority. Without such showing plaintiff completely fails to establish an estoppel. 31 C.J.S. Estoppel § 142, page 703; 28 Am.Jur.2d, Estoppel and Waiver, section 123, page 786; People v. Gustafson, 53 Cal.App.2d 230, 127 P.2d 627, 634; Annotations, 1 A.L.R.2d 347.

If more is needed, we refer to Rule 1, Division IV, Retail Sales Tax, I.D.R., which prohibits commission employees from giving opinions.

■ We hold plaintiff fails to qualify as one entitled to the protection of equitable estoppel. Such a party must be "excusably ignorant" of the true facts. He must show diligence in safeguarding his own rights. 28 Am.Jur.2d, Estoppel and Waiver, section 80, page 720; Anfenson v. Banks, 180 Iowa 1066, 1092, 1105, 163 N.W. 608, 616, 617, L.R.A.1918D, 482.

■ We have found nothing which would permit us to hold equitable estoppel may be exercised against the taxing power of a state based on no more than an oral representation (the content of which is not shown) by a tax commission employee (whose authority is not defined) when such representation is directly contrary both to the statute imposing the tax and tax commission rules implementing the statute. Heyward v. South Carolina Tax Commission, 240 S.C. 347, 126 S.E.2d 15, 17; Wasem's, Inc. v. State of Washington, 63 Wash.2d 67, 68, 385 P.2d 530, 531; A. H. Benoit and Co. v. State Tax Assessor, 160 Me. 201, 202 A.2d 1, 5; Henderson v. Gill, 229 N.C. 313, 49 S.E.2d 754, 756; Weaver Stone Co. v. Comptroller of Treasury, 235 Md. 15, 200 A.2d 53, 56; State v. Maddox Tractor & Equipment Co., 260 Ala. 136, 69 So.2d 426, 430.

■ There was perhaps neglect and lack of diligence on the commission's part and this in turn has no doubt caused plaintiff a tax liability it could otherwise have passed on to others under chapter 422. But laches or failure to collect a tax, no matter how long such conduct is continued, does not estop the state from requiring payment of a tax which is due and unpaid. 28 Am.Jur.2d, Estoppel and Waiver, section 124, page 787; 31 C.J.S. Estoppel § 147, pages 730, 731.

For the reasons heretofore stated, we find the trial court was wrong in holding the tax was improperly assessed. We reverse that finding and enter judgment against plaintiff in the amount of $2264.48 plus penalty of $245.66.

Reversed.

All Justices concur except SNELL, J., GARFIELD, C. J., and STUART and BECKER, JJ., who dissent.

SNELL, Justice (dissenting).

I dissent as I cannot agree with the conclusion reached in Division III of the majority opinion.

A discussion of what was told plaintiff and plaintiff's reliance thereon is in my opinion completely irrelevant and not an issue before us. With commendable frankness the commission says in its reply brief, (I quote):

"The fact is that appellee was advised in 1945 by tax commission personnel that it did not have to collect sales tax on sales of repossessed merchandise and, as a consequence, appellee surrendered its retail sales tax permit."

That the commission was fully advised appears without question.

It is thus admitted that there was advice and reliance thereon. That there was damage appears from the fact that the plaintiff is now required to pay $2,264.48 plus $245.66 penalty.

We thus have a situation where the commission's representative advised plain-

tiff that it need not collect the tax. This was not a casual conversation. It was admittedly advice, as distinguished from mere conversation, given by commission personnel to plaintiff in plaintiff's place of business. The commission admits that as a consequence of this advice plaintiff surrendered its sales tax permit. The commission was advised of plaintiff's action and for nearly 20 years or more acquiesced by silence and inaction. After that lapse of time the commission now goes back 5 years (1960 to 1965) and asks plaintiff to pay with penalty what plaintiff was told it need not collect.

Every element of estoppel is present. There was advice, reliance thereon, acquiescence and now a determination of loss.

There is neither claim nor evidence of any fraud, misrepresentation, concealment or nondisclosure on the part of plaintifff.

It is, of course, true and need not be discussed here that a taxpayer may not take advantage of an error or omission to escape taxes or charges against his own property. If a tax assessor fails to assess or the county auditor fails to list property for taxation or the county treasurer fails to collect, liability remains.

Such is not the case before us.

The nature. of our sales tax should be kept in mind. It is an excise tax as distinguished from a property or income tax. The State makes a holder of a sales tax permit a tax collector. The tax is upon the sale of goods and is payable by the purchaser.

Section 422.43, Code of Iowa, so far as applicable here, imposes a tax upon. the gross receipts from sales of tangible personal property sold at retail to consumers or users.

Section 422.48 provides:

"Adding of tax. Retailers shall, as far as practicable, add the tax imposed under this division, or the average equivalent thereof, to the sales price or charge and when added such tax shall constitute a part of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts. * * * "

Section 422.49 provides:

"Absorbing tax prohibited. It shall be unlawful for any retailer to advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this division will be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded."

In the case before us the commission is asking plaintiff to absorb and pay, not its own tax but a tax plaintiff was prohibited by law from saying it would absorb, and was told it need not collect. This argument is based on the theory that plaintiff should have known more about the tax laws than the commission's own agent. The imposition of such a liability is manifestly unfair.

Equitable estoppel is a doctrine resorted to when otherwise manifest injustice would result. 28 Am.Jur.2d, Estoppel, section 27, page 627, section 28, page 629. It is not generally invoked against the state, particularly when the collection of revenue is involved. 28 Am.Jur.2d, Estoppel, section 122, page 783, section 123, page 783, 31 C.J.S. Estoppel § 138, page 675, § 140, page 690, § 147, page 730; Annotations, 1 A.L.R. 2d 341.

However, there is growing concern over unconscionable results which are sometimes inevitable if this doctrine is never permitted as a defense against the state or one of its agencies. A number of courts have questioned the soundness of public policy that prevents a taxpayer from urging estoppel to prevent manifest injustice.

This is even more true where the taxpayer, as here, collects and remits for a tax which he is permitted or required to pass on to another. In such cases a later deter-

mination of tax liability compels the taxpayer to pay from his own funds a tax he could have collected from others except for the erroneous representation.

In 31 C.J.S. Estoppel § 147, page 733, after discussing the general rule, this appears:

"Under exceptional circumstances, however, there may be an equitable estoppel of the government in connection with tax matters, but the case must be clear and the injustice great. In a proper case a tax official may be estopped with reference to tax matters arising as between him and the government."

In support of this statement the following authorities are cited by C.J.S.:

U.S.–City of St. Louis v. Mississippi River Fuel Corp., D.C.Mo., 57 F.Supp. 549; Cal.–U.S. Fidelity & Guaranty Co. v. State Bd. of Equalization, 303 P.2d 1034, 47 C[al.] 2d 384; Ohio–Crown Pipe & Foundry, Inc. v. Davis [Ohio] Com.Pl. 167 N.E.2d 390; Pa.–In re Heberton's Estate, 51 Pa.Dist. & Co. 285, affirmed 41 A.2d 654, 351 Pa. 564; Tenn.–City of Memphis v. W. M. S. Co., 326 S.W.2d 828, 46 Tenn.App. 153; Wash.–Seward v. Fisken, 210 P. 378, 122 Wash. 225, 27 A.L.R. 1208; Wis.–Libby, McNeill & Libby v. Wisconsin Dept. of Taxation, 51 N.W. 2d 796, 260 Wis. 551.

Where a taxpayer is a mere collecting agency the state may be estopped to impose tax by act of its employees. Market St. Ry. Co. v. California State Board of Equalization, 290 P.2d 20, 137 C[al.] A[pp.] 2d 87.

The commission cites and relies heavily on City of Ames v. State Tax Commission, 246 Iowa 1016, 71 N.W.2d 15, wherein it is held that the rule-making power of the commission may not be inconsistent with the statute, and Michigan-Wisconsin Pipe Line Company v. Johnson, 247 Iowa 583, 73 N.W.2d 820, involving changes in administrative rules. Both cases involved the liability of the taxpayer for use tax. The liability of a collecting agent such as we have here was not involved.

An extensive discussion by the Supreme Court of California appears in United States Fidelity & Guaranty Company v. State Board of Equalization, 47 Cal.2d 384, 303 P.2d 1034. That case involved the liability of casualty companies for premium taxes on their agents' commissions and fees for arranging bonds. Estoppel of the state was claimed and rejected but the plaintiffs were not mere collecting agents. Plaintiffs had relied on an erroneous ruling by an official but their only claim of loss was that they would have otherwise raised their premium rates.

We quote excerpts from the opinion:

"There are many instances in which an equitable estoppel in fact will run against the government where justice and right require it. [Citations] * * *

"The government may be estopped in tax matters. [Citations] * * * However, it is the unusual case in which estoppel will be applied in tax cases; the case must be clear and the injustice great (see authorities last cited). This is indicated by the general rules in the field. 'The power of taxation shall never be surrendered or suspended by any grant or contract to which the State shall be a party.' * * * Obviously, a tax administrator should not be permitted by an erroneous ruling to exempt a taxpayer from the obligation to pay taxes. But that is as far as the rule goes. The proper limitations on that rule were pointed out by this court in La Societe Francaise v. California Emp. Comm., 56 Cal.App.2d 534, 133 P.2d 47, * * *."

In the La Societe case the plaintiff relying on a ruling that was later reversed did not deduct the unemployment insurance tax from employee's wages. The court held the state was estopped from collecting the amount of tax representing employee's contribution, but was not estopped to collect contributions imposed on the employer.

I have no quarrel with the general rule that estoppel may not be invoked against the government in tax or revenue matters. However, I think the present case presents

**514**

that unusual situation where manifest justice requires an exception. The result sought by the commission and approved by the majority in my opinion is unconscionable.

Tax laws are enacted to get money and rarely give peace and comfort to the taxpayer but they should not be so administered as to entrap and penalize the innocent.

If the taxing authorities made a mistake the correct rule should be applied prospectively but not retrospectively at the expense of one whose only mistake was reliance on the advice of the commission's agent.

Because of the facts in this particular case I think the commission should be estopped from collecting the tax.

I would affirm.

GARFIELD, C. J., and STUART and BECKER, JJ., join in this dissent.