DES MOINES AND CENTRAL IOWA RAILWAY COMPANY, appellant,
v. IOWA STATE TAX COMMISSION, appellee.

No. 50548.

MAY 8, 1962.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellant.

George W. Murray, Special Assistant Attorney General, and John M. Stull, State Counsel for the Iowa State Tax Commission, for appellee.

THORNTON, J.— This is an appeal from an order of the Iowa State Tax Commission confirming an assessment for sales tax against plaintiff, Des Moines and Central Iowa Railway Company. On the issues involved the trial court upheld the order of the commission and plaintiff appeals to us. The proceedings are pursuant to section 422.55, Code of Iowa, 1958. Our review

is de novo. Rule 334, Rules of Civil Procedure; and Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission, 248 Iowa 497, 499, 81 N.W.2d 437, 439.

There are two categories of sales involved. We will deal with them in the order presented.

I. The first category consists of sales made by plaintiff to the Fort Dodge, Des Moines and Southern Railway Company, hereinafter referred to as the Fort Dodge line. Plaintiff-railroad operates principally in Des Moines and has approximately 25 miles of main line track. It connects with all major railroads coming into Des Moines. The Fort Dodge line operates from Des Moines to Fort Dodge and Webster City with branch lines in various towns in the area. It has about 145 miles of main line track and connects with all interstate railroads traversing the territory in which it operates. Plaintiff owns approximately 70% of the stock of the Fort Dodge line and controls its board of directors. J. C. Bussey is the general manager of plaintiff and the Fort Dodge line. His testimony is a short course in short line railroading. The property involved in the first category is salvage and surplus railroad property consisting of boxcars, crossties, rails, poles, switch timbers, spikes, washers, tie plates, angle bars, and ballast. During the years 1949 through 1957 plaintiff abandoned its operations to Granger and Perry. This reduced its miles of track from around 80 miles to the present 25. During this time it converted from electrical power to Diesel. The items involved in this category of sales were the surplus usable items salvaged by the abandonment of some 55 miles of track. A large portion of such salvaged items were used by plaintiff in maintaining its own track. The sales made to Fort Dodge line were during the years 1953, 1956 and 1957. There are 14 separate sales, the total dollar value is $105,839.62. The amount of tax in this category is $2618.11 and penalty of $419.41.

Plaintiff contends the disposal by it of this salvage and obsolete property does not make it a dealer in salvage and such transactions are casual or isolated sales and are therefore not subject to the retail sales tax. The trial court found these sales were not casual or isolated and in the course of its ruling stated, "The statute provides for no exemption for this sort of sale in the circumstances shown in this case, * * *."

█ Plaintiff relies upon rule 10 and rule 30 of the State Tax Commission. These rules provide:

"Rule No. 10. Applies to sales tax only. Nature of retail sales tax. The retail sales tax consists of four parts which are as follows:

"1. A tax of two per cent on the gross receipts from all sales of tangible personal property consisting of goods, wares and merchandise sold at retail by a person *engaged in the business of selling such property* in the state to consumers or users, and the gross receipts from serving meals. * * *." (Emphasis added.)

"Rule No. 30. Applies to sales tax only. Casual or isolated sales. Receipts from casual or isolated sales are not subject to the sales tax law. Where a person sells his household furniture, where a farmer sells his farm machinery, implements or other farm equipment, the same would be casual or isolated sales. All sales made by officers of a court, pursuant to court orders, as for example, sales made by sheriffs in foreclosure proceedings or sales of confiscated property, are casual sales.

"Manufacturers in the business of producing tangible personal property, whose sales are primarily other than at retail, are not deemed to be making casual or isolated sales, when they sell tangible personal property with any regularity to purchasers for use or consumption, even if these sales at retail may comprise a small fraction of their total sales.

"A farmer or truck-gardener making sales regularly from a roadside stand or a regular delivery route is not making casual sales, although a farmer selling products occasionally to transient callers is deemed to be making casual or isolated sales.

"If a person holds himself out as offering to sell any item of tangible personal property to any person desiring to purchase it for use or consumption, and if he makes regular sales of like nature or deliveries, he is a retailer within the meaning of the act, and must secure a retail sales tax permit and pay a sales tax to the state."

The sales tax is imposed by section 422.43, Code of Iowa. (The Codes of 1950 and 1954 are applicable to the sales under consideration, the applicable part of section 422.43 is identical with the wording in the 1958 Code. The same wording appeared in the temporary statute, chapter 82, section 38, Extra

Session, 45th General Assembly, and in chapter 196, section 2, 47th General Assembly.) In pertinent part, it states:

"There is hereby imposed, beginning the first day of April, 1937, a tax of two percent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this act [division], sold at retail in the state to consumers or users; * * *."

The exemptions from the tax imposed are provided in section 422.45. None of them is applicable, nor does plaintiff so claim, to the sales under consideration.

The applicable definitions are found in section 422.42. It provides:

"422.42 Definitions. The following words, terms, and phrases, when used in this division, have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning: * * *

"2. 'Sales' means any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration.

"3. 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for processing or for resale of tangible personal property * * *.

"4. 'Business' includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect.

"5. 'Retailer' includes every person engaged in the business of selling tangible goods, wares, or merchandise at retail, * * *."

We cannot see a statutory basis for rule 10 or rule 30. Section 422.43 imposes a tax "upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the state to consumers or users." This section clearly imposes a tax on the gross receipts from all sales of personal property at retail to consumers or users. W. J. Sandberg Co. v. Iowa State Board of Assessment and Review, 225 Iowa 103, 278 N.W. 643. The purchaser here, the Fort Dodge line, is a consumer or user. The definition of retail sale in section 422.42 is a restatement of the above-quoted portion of section 422.43. It

takes nothing away from a sale to a consumer as being taxable. Nowhere do we find a suggestion a casual or isolated sale, if it is to a consumer or user and is not for processing or resale, is not subject to the tax imposed. Nor are we able to find anything in the statute to the effect the tax is limited to "all sales of tangible personal property consisting of goods, wares and merchandise sold at retail by a person engaged in the business of selling such property in the state to consumers or users." The definitions of "business" or "retailer" above set out do not purport to limit the application of section 422.43 or exempt any sales therefrom. Retailers are mentioned in determining their gross receipts and conditional sales in paragraph 6 of section 422.42. They are required to add the tax, section 422.48, prohibited from absorbing the tax or advertising that they will, section 422.49, required to keep records, section 422.50, make returns, section 422.51, and have a permit, section 422.53, as well as pay the tax due as provided in section 422.52. Section 422.52, subsection 1, provides, "The tax levied hereunder shall be due and payable in quarterly installments * * *." This subsection is not limited to retailers or those in business.

Section 422.61, subsection 1, made applicable by section 422.59, gives the tax commission power to prescribe all rules and regulations not inconsistent with the provisions of the chapter, necessary and advisable for its detailed administration and to effectuate its purpose. The stated purpose may be found at page 409, chapter 196, 47th General Assembly, "AN ACT to impose a tax on the gross receipts from retail sales as defined herein; * * *."

An administrative board has only such power to enact rules as are not inconsistent with the law to be administered. It has no power to impose a tax nor to grant an exemption from a tax. Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission, 248 Iowa 497, 504, 505, 81 N.W.2d 437, 442; Bruce Motor Freight v. Lauterbach, 247 Iowa 956, 77 N.W.2d 613, 616, and citations; Holland v. State of Iowa, Insurance Department, 253 Iowa 1006, 115 N.W.2d 161, and citations; and Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 507, 508, 107 N.W.2d 553, 558, and citations. Both rule 10 and rule 30 purport to grant an exemption from

the tax imposed, rule 10 by limiting the tax imposed to those sales at retail by a person engaged in the business of selling such property, and rule 30 by stating casual or isolated sales are not subject to the tax. Both rules are inconsistent with section 422.43. They are not included in the specified exemptions in section 422.45. The only support for rule 10 is found in the definitions of "retailer" and "business" in subsections 4 and 5 of section 422.42, but there is nothing in those definitions limiting the tax imposed to the retailer there defined.

When the legislature wished to exclude certain merchandise from being included in a definition, it used plain language, e.g., "but does not include commercial fertilizer or agricultural limestone or materials," subsection 3, section 422.42, in the definition of retail sale. The same is true of section 422.45 granting certain exemptions. This is not a case of a debatable interpretation. There is no basis for it.

██ ██ Holding as we do that rule 10 and rule 30 are invalid, deprives plaintiff of the basis for its claim the sales in this category are not subject to the tax. The commission did not present this argument. It merely claims the sales did not come within the rules and there is no statutory basis for not taxing these sales under the facts. However, we are justified in affirming a correct decree of the trial court on any grounds appearing in the record. And it becomes our duty in a case of this kind to point out fully the reason for decision even though this reason was not presented in argument, where to do otherwise would endorse rules erroneously interpreting applicable statutes.

This is not a case where the trial court decided right for a wrong reason. The court, as above pointed out, stated in its decision the statute provided no exemption for this sort of sale under the circumstances of the case. As supporting our disposition of this phase of the case, see Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 525, 526, 111 N.W.2d 317, 322, 323; Jewett v. Jewett, 252 Iowa 883, 109 N.W.2d 36; Hayne v. Cook, 252 Iowa 1012, 109 N.W.2d 188; In re Will of Smith, 245 Iowa 38, 60 N.W.2d 866; Duncan v. Golden, 316 P.2d 1116, 1118 (Okla. 1957); 3 Am. Jur., Appeal and Error, section 825, page 367, and section 1163, page 674; 5B C. J. S., Appeal and Error,

section 1849, page 287; and 5 C. J. S., Appeal and Error, section 1464(1), pages 656, 657.

II. The second category is of transfers by plaintiff to the Fort Dodge line of surplus railroad material purchased by plaintiff from the Rock Island Railroad at Fowler, Kansas, and from the Tennessee Valley Authority.

Plaintiff contends these transfers are not subject to retail sales tax for the following reasons: (1) It acted as agent for the Fort Dodge line; (2) the purchases at Fowler, Kansas, and from the Tennessee Valley Authority were joint purchases by it and the Fort Dodge line; and (3) that it and the Fort Dodge line are in the relation of parent and subsidiary corporation, that one branch or department of the corporate structure is purchasing for the other, and the corporate entities should be disregarded.

Directing our attention to number three above, we find plaintiff owns 70% of the stock of the Fort Dodge line, controls its board of directors, and both corporations are under the same management. However, the record does not show control of the Fort Dodge line was purchased to fulfill a particular function for plaintiff. We find nothing except one short line railroad bought control of another and that both are operated as separate corporate entities.

There is no apparent corporate purpose performed by one for the other. In authorities cited by plaintiff we find where a corporate purpose is shown the separate entities have been disregarded. Wabash Ry. Co. v. American Refrigerator Transit Co. (8th Cir. 1925), 7 F.2d 335; and State v. Saint Paul Union Depot Co., 42 Minn. 142, 43 N.W. 840, 6 L. R. A. 234. And one corporation has been held the agent of another in Consolidated Indiana Coal Co. v. National Bituminous Coal Commission (7th Cir. 1939), 103 F.2d 124. Contra see: Superior Coal Co. v. Department of Finance, 377 Ill. 282, 36 N.E.2d 354; and Keystone Mining Co. v. Gray (3rd Cir. 1941), 120 F.2d 1. We have examined other authorities submitted but do not find anything that suggests common management and control of one corporation by another without more warrants us in disregarding the corporate entity or holding one is the agent for the other.

■■ III. However, this does not prevent one corporation from being the agent for the other if this is in fact the manner in which a transaction was carried out. The agent for a disclosed principal would not be liable for sales tax on the amount he is reimbursed by the principal. See Rowe v. State Tax Commission, 249 Iowa 1207, 91 N.W.2d 548. Nor would one of two joint purchasers be liable for sales tax on the amount he is reimbursed for the other purchaser's share of the purchase price. But the facts and circumstances must point to one or the other. In this case we do not think the facts do. The strongest statement of the manager of both plaintiff and the Fort Dodge line is:

"DM & CI [plaintiff] sent a roadway supervisor to Fowler, Kansas, and he made an inventory of the track as to the materials that would be reusable by either of the two railroad properties here in Iowa, and it was on the basis of this inventory that the purchase was made and a general idea of the use the materials would be divided between the two properties was made. After that was done the DM & CI negotiated in its name to purchase the Fowler, Kansas, branch from the Rock Island as acting in its own capacity [and] as agent, more or less, for the Ft. Dodge."

■■ From subsequent steps taken by the two railroads we do not think plaintiff acted as an agent, even more or less as one. They entered into a written contract wherein plaintiff is designated as the seller and the Fort Dodge line as the purchaser, delivery dates were set, time payments were provided, and the Fort Dodge line was given the right to reject materials offered and delivered "* * * it, in its sole judgment, deems unsuitable, * * *." This right to reject is not the usual right of a principal. The general manager of both railroads testified this contract was entered into on the advice of their general counsel, evidently of both railroads. He testified the advice given was, that if the transaction of materials and equipment between the two railroads was to exceed $50,000 for the current year the Interstate Commerce Commission Act required that it be done only on the basis of a public invited bid, award to the lowest bidder, and a contract. This advice was followed. The manager also testified the Tennessee Valley Authority material was handled without written contracts, but he does not say

plaintiff was acting as an agent in that transaction. The records of the two railroads indicate that transaction was handled as a sale. In neither instance does the manager actually testify the two railroads acted jointly. He does not testify the written contract between them on the Fowler, Kansas, material was a subterfuge. We would have to so find if we were to hold plaintiff was an agent.

We have not failed to consider the fact the Fort Dodge line was not in good shape financially and was unable to pay cash for the items purchased at Fowler, Kansas, and from the Tennessee Valley Authority. The manner in which financial assistance was given was by plaintiff purchasing the materials and then reselling on time. This resale is taxable.

On the Fowler, Kansas, material plaintiff showed a profit on its books of $7822.51. The total cost of the purchase, dismantling and freight was $100,704.57, paid by plaintiff, nonusable material was sold by plaintiff for $52,595.67, for the material received the Fort Dodge line paid plaintiff $2000 for a track scale and $20,758.92 for other materials, plaintiff charged its inventory account $33,170.49.

The determination of whether plaintiff acted as an agent or the two railroads acted jointly is solely a question of fact. See Fowler v. Berry Seed Co., 248 Iowa 1158, 84 N.W.2d 412. It is our holding that the two railroads handled these transfers between them as sales and did not act jointly, and plaintiff did not act as an agent.

It follows that both categories of sales submitted to us are taxable. The decree of the trial court is therefore affirmed.— Affirmed.

All Justices concur except Moore, J., not sitting.