**In re HUBS REPAIR SHOP, INC., Debtor.**

**Daniel P. ERNST, Trustee in Bankruptcy for Hubs Repair Shop, Inc., Plaintiff,**

v.

**IOWA DEPARTMENT OF REVENUE, Defendant.**

**In re MEYER–PAULY HOME FURNISHINGS, INC., Debtor.**

**Daniel P. ERNST, Trustee in Bankruptcy for Meyer-Pauly Home Furnishings, Inc., Plaintiff,**

v.

**STATE OF IOWA DEPARTMENT OF REVENUE, Defendant.**

Bankruptcy Nos. 81–01077, 80–01064. Adv. Nos. 82–0149, 82–0150.

United States Bankruptcy Court, N.D. Iowa.

April 4, 1983.

*pra,* the court is warranted in exercising its discretion to deny setoff.

Mark A. Cody, Dubuque, Iowa, for plaintiff.

James D. Miller, Ames, Iowa, for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS, with Memorandum

WILLIAM W. THINNES, Bankruptcy Judge.

The matters before the Court involve the determination of whether the bankruptcy liquidation sales of the Debtors' tangible personal property held by the Trustee are subject to Iowa retail sales tax. The parties submitted briefs but waived oral argument. The matters were taken under advisement and the Court, having been fully advised, now makes the following Findings of Fact, Conclusions of Law and Orders:

### FINDINGS OF FACT

### IN RE HUBS REPAIR SHOP, INC.

1. The bankruptcy proceedings in this matter were commenced by the filing of the Petition by the Debtor on May 21, 1981, under Chapter 7 of Title 11 of the United States Code.

2. The nature of the Debtor's business at the time of filing the Petition in Bankruptcy was that of a dealer in and repair shop for new and used farm equipment and machinery.

3. On September 10, 1981, the Trustee held a public sale of all the Debtor's personal property by means of public auction.

4. On November 17, 1981, this Court approved the Trustee's Report of Sale and Application for Confirmation and Approval of Auction and Public Sale, indicating that there were net proceeds from the sale of the Debtor's personal property in the amount of $78,985.07.

5. On March 5, 1982, the Iowa Department of Revenue served upon the Trustee a Notice of Assessment which showed a total sum due the Iowa Department of Revenue of $3,438.33, said amount arising from the retail sales tax allegedly due from the September 10, 1981, public sale of the Debtor's personal property.

6. The Iowa Department of Revenue revised its assessment and reduced its tax claim to $2,088.81, together with a penalty of $522.20, interest in the sum of $148.31, and a fee in the sum of $1.35, for a total amount due the Department of $2,760.67.

7. To secure its claim, the Iowa Department of Revenue retained the Trustee's State of Iowa *personal* income tax refund.

### IN RE MEYER–PAULY HOME FURNISHINGS, INC.

1. On August 25, 1980, the Debtor filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code.

2. At the time of the filing of its Petition in Bankruptcy, the nature of the Debtor's business was that of a retail home furnishings dealer.

3. On June 22, 1981, the Debtor's bankruptcy proceeding under Chapter 11 was converted to a proceeding under Chapter 7.

4. On July 19, 1981, the Trustee held a public auction of all of the Debtor's personal property.

5. On July 21, 1981, the Trustee filed his Report of Sale and said Report indicated the receipt of net proceeds from the sale of the Debtor's personal property was in the amount of $32,798.40.

6. On September 11, 1981, this Court approved the Trustee's Report of Sale.

7. On March 9, 1982, an action was commenced to determine whether the public sale of the Debtor's personal property was subject to Iowa retail sales tax.

## CONCLUSIONS OF LAW

1. The bankruptcy liquidation sales held by the Trustee in these cases were taxable retail sales within the meaning of *Iowa Code* § 422.43.

2. All of the property, both inventory and non-inventory assets, sold at the public sales, is subject to the Iowa retail sales tax.

3. Federal law does not bar the Iowa Department of Revenue from assessing and collecting state retail sales tax arising from a bankruptcy liquidation sale.

4. The Trustee is not personally liable for the retail sales tax.

5. The Iowa Department of Revenue is entitled to an administrative expense for the retail sales taxes arising of the liquidation sales pursuant to 11 U.S.C. § 503(b)(1)(B)(i).

6. The Iowa Department of Revenue is not entitled to claim any interest or penalty arising out of the Trustee's refusal to turn over the monies claimed by the department as taxes because there was "reasonable cause" for the Trustee's nonpayment of the tax within the meaning of *Iowa Code* § 422.58(1).

## ORDERS

IT IS THEREFORE ORDERED that the Plaintiffs' Complaints be denied and dismissed.

IT IS FURTHER ORDERED that the Defendant, Iowa Department of Revenue, be given leave to file in each of these bankruptcy estates an administrative expense claim for the retail sales taxes owing to it, said claims to be filed within 25 days from the date of this Order.

## MEMORANDUM

The parties before this Court are Daniel P. Ernst, Trustee in Bankruptcy (hereafter the "Trustee"), and the Iowa Department of Revenue (hereafter the "Department"). The Trustee was appointed to oversee the Chapter 7 liquidation bankruptcies of Hubs Repair Shop, Inc., (hereafter "Hubs"), and Meyer-Pauly Home Furnishings, Inc., (hereafter "Meyer-Pauly"), (collectively referred to as the "Debtors"). Both Debtors were engaged in business; the former was a new and used farm equipment dealer and repairman, and the latter was a seller of home furnishings. In the course of administering each estate, the Trustee aggregated the property of each Debtor and held a one-time liquidation auction in each case. The Trustee is now holding the proceeds of these two sales for distribution to the respective creditors of each estate.

The common issues involved in both cases before this Court revolve around the tax status of the liquidation sales of the Debtors' property. In particular, the Department alleges that these liquidation sales are taxable events within the meaning of Iowa's retail sales tax code, and that the State of Iowa is therefore entitled to assess a three percent sales tax on the gross receipts taken in by the Trustee at each sale. *Iowa Code* § 422.42 *et seq.* (1981). Further, the Department alleges that the State is entitled to an administrative expense priority under 11 U.S.C. § 503(b)(1)(B)(i) of the Bankruptcy Reform Act of 1978 (hereafter the "Code").

The Trustee contends that the liquidation sales are exempt from Iowa retail sales tax because a one-time business liquidation sale falls within the "casual sales" sales tax exemption created by *Iowa Code* § 422.-45(6). The Trustee further asserts that if the liquidation sale is taxable under Iowa law, the imposition of a retail sales tax

upon a bankruptcy liquidation sale would impose an impermissible burden upon the processes of the federal bankruptcy courts.

■ ▪ The Court is explicitly given jurisdiction to determine the applicability of the Iowa retail sales tax to these sales. 11 U.S.C. § 505(a)(1). This Court is, however, required to interpret Iowa law prior to analyzing the federal issue. If the liquidation sales are found to be exempt under Iowa law, then the Court can avoid an unnecessary interpretation of federal law. *Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909).

## DIVISION I

A. *Whether a Bankruptcy Liquidation Sale is a "Retail Sale"*

■ A threshold issue is whether bankruptcy liquidation sales are 'retail sales' within the meaning of *Iowa Code* § 422.43. To resolve this issue, the Court must look to all relevant statutes and applicable administrative rules which are not inconsistent therewith. *Des Moines and Central Iowa Ry. Co. v. Iowa State Tax Comm'n.*, 115 N.W.2d 178, 181, 253 Iowa 994 (1962).

■ Section 422.42 provides for a tax based upon the gross receipts of retail sales:

There is hereby imposed a tax of three per cent upon the gross receipts from *all sales* of tangible personal property . . . except as otherwise provided in this division *sold at retail* . . . to consumers and users. (Emphasis added).

To determine the coverage of this section, resort must be had to the statutory definitions of the terms "sale" and "retail." "Sale" is defined as "any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration." *Iowa Code* § 422.-42(2). This definition is clearly broad enough to encompass a public auction of goods going to the highest bidder. Sales of

goods are considered to be "at retail" when the goods are sold "to a consumer or to any person for any purpose *other* than for processing or for resale." *Iowa Code* § 422.-42(3). (Emphasis added).

Goods are sold for "processing" when it is "intended that such property shall by means of fabrication, compounding, manufacturing, or germination become an integral part of tangible personal property intended to be sold ultimately at retail." *Iowa Code* § 422.42(3). An example of a sale for processing would be a bakery's purchase of flour. The sale of the flour would not include an assessment of the retail sales tax. When, however, the baker's finished products were sold to consumers, a retail sales tax would be imposed. An example of a purchase for resale would be a store owner's purchase of stock from suppliers for the purpose of making these goods available to consumers. The suppliers would not charge the store owner a tax on the initial sale of stock, but the store owner would add a sales tax when those goods were eventually sold to consumers. In light of the statutory definitions, the Court finds that the liquidation sales held by the trustee come within the reach of the retail sales tax to the extent that purchasers at the respective auctions were not buying with the intent to "process" or "resell" the goods.[1] The straightforward meaning of the terms "sale" and "retail" encompass liquidation sales held by means of a public auction. *S & M Finance Co. Fort Dodge v. Iowa State Tax Comm'n.*, 162 N.W.2d 505, 508 (Iowa 1968).

Contrary to the Trustee's position, the fact that these sales are court ordered liquidations conducted by a federal bankruptcy trustee does not, by itself, remove them from the taxing statute. The Iowa Supreme Court has held that the "guiding and controlling consideration is the disposition of the goods made by the buyer, not the character of the buyer or the seller." *W.J.*

---

1. In the case of Hubs Repair, the sale comprised the Debtor's inventory of new and used farm implements, office equipment and supplies. In the case of Meyer-Pauly Home Furnishings, the sale comprised the Debtor's stock of home furnishings, office furniture and other miscellaneous business equipment.

*Sandberg Co. v. Iowa State Board of A. & R.,* 278 N.W. 643, 645, 225 Iowa 103, *rehearing denied,* 281 N.W. 197, 225 Iowa 103 (1938).[2]

■ The Administrative Code's grant of a tax exemption for retail sales resulting from court ordered foreclosures of chattel mortgages does not compel a different conclusion. *Iowa Admin. Code,* § 730, ch. 18.4 (1982). Arguably, such a provision manifests an intent to exempt all court ordered sales from the sales tax. Such is not the case. The literal language of the administrative rule states the "sales tax applies to receipts from other foreclosure sales when the goods are sold at retail." *Iowa Admin. Code,* § 730, ch. 18.4. A bankruptcy liquidation sale, though carried out pursuant to a court order, is clearly not a foreclosure of a "chattel mortgage." In addition, the antecedent Iowa administrative rule on sales tax exemptions stated that all sales which were made by officers of a court pursuant to court order were exempt from sales tax.[3] *Central Iowa Ry. Co.,* 115 N.W.2d at 180.

**2.** The Administrative Code expressly contemplates that bankruptcy trustees withhold and use retail sales tax permits. The Administrative Code states:

> A permit of a ... bankrupt, assignor or debtor for whom a receiver has been appointed, which is valid at the time a fiduciary relation is created, shall continue to be a valid permit for the fiduciary to continue the business for a reasonable time, or to close out the business for the purpose of settling an estate ... *Iowa Admin.Code,* § 730, ch. 13.13.

Moreover, barring a statutory exemption, the Administrative Code would require the Trustee to assess and collect the retail sales tax, even from a one-time liquidation sale at which all the assets of the business were sold.

> By virtue of their appointment, trustees, who continue to operate, manage or control a business involving the sale of tangible personal property ... *or engage in liquidating the assets of a business by means of sales made in the usual course of trade,* shall hold a permit and collect and remit the tax. These officers are liable for the collection and remittance of tax, even though they may have been appointed by a state or *federal* court. *Iowa Admin.Code,* § 730, ch. 13.13. (Emphasis added).

The Trustee argues that "sales made in the usual course of trade" does not apply to a one time liquidation sale. The Court does not agree. The phrase "usual course of trade"

When the rule was subsequently re-enacted, the language was changed to its present form. The language of the new rule is narrow, and excludes from tax liability only the aforementioned court ordered chattel mortgage foreclosure sales.[4] Therefore, the Court holds that a bankruptcy liquidation sale, which is otherwise within § 422.43, is not exempted from sales tax simply because a court orders the sale.

## DIVISION II

### A. *The Casual Sales Exemption*

The Trustee argues that even if the liquidation sales are within the reach of the retail sales tax provisions, that they fall within a statutory exemption. Iowa law provides that all retail sales shall be subject to the tax unless "otherwise provided" within the tax code. *Iowa Code* § 422.43. The exemption at issue in this case is the one provided for "casual sales." *Iowa Code* § 422.45(6). Casual sales are defined as follows:

> means what is usual in the course of liquidating a business; it thus includes all means of liquidating a business, whether by auction or by holding the business open during regular hours. To hold otherwise would allow certain types of liquidation sales—in these cases, one-time auctions—to be free of the retail sales tax, simply because of the form of the sale.

**3.** At the time the antecedent rule was enacted, the Iowa retail sales tax statute did not contain a "casual sales" exemption. *Des Moines & Central Iowa Ry. Co. v. Iowa State Tax Comm'n.,* 115 N.W.2d 178, 181, 253 Iowa 994, 999 (1962). The Iowa Supreme Court struck down the antecedent rule's sales tax exemption stating that "an administrative board has only such power to enact rules as are not inconsistent with the law to be administered." *Des Moines & Central Iowa Ry.,* 115 N.W.2d at 181. Since there was no sales tax exemption in the Iowa Code, the Tax Board could not create one. The following year, however, the Iowa Legislature enacted the "casual sales" exemption. *Iowa Code* § 422.45(6).

**4.** This limitation is significant in light of the fact that the Administrative Code requires that sales tax be assessed on liquidation sales made by federally appointed trustees—see note 2, *supra*—which sales would generally require court approval.

a. Sales of a nonrecurring nature of tangible personal property, if the seller, at the time of the sale, is not engaged for profit in the business of selling tangible personal property or services taxed under section 422.43.

b. The sale of all or substantially all of the tangible personal property held or used by the retailer in the course of his trade or business for which the retailer is required to hold a sales tax permit when the retailer sells or otherwise transfers the trade or business to another person who shall engage in a similar trade or business.

There is no case law which provides relevant interpretations of the casual sales exemption. The Court is thus forced to rely upon the relevant Administrative Rules—themselves unconstrued—and policy considerations supported by the general structure of the tax code. It should be noted that tax exemptions are strictly construed against the taxpayer; thus the Trustee "has the burden of proving clearly that he comes within its provisions." *S & M Finance,* 162 N.W.2d at 508–509.

### B. *Iowa Code § 422.42(12)(a)*

Under § 422.42(12)(a), there are two elements, both of which must be present to qualify a sale for the exemption. *S & M Finance,* 162 N.W.2d at 508. The first element is that the sale be of a nonrecurring nature. § 422.42(12)(a). An example of a nonrecurring sale would be where a retail clothing business decides to sell its company plane to a private individual. *Iowa Admin. Code,* § 730, ch. 18.21(1), ex. A. The sale is at retail because the plane is sold for a purpose other than for subsequent processing or resale, yet it meets the nonrecurring test because of its isolated nature. What

constitutes a nonrecurring sale is, however, very limited. The Administrative Code states:

Two separate selling events ... within a twelve month period shall be considered nonrecurring. Three such separate selling events within a twelve month period shall be considered recurring. Tax shall only apply commencing with the third separate selling event. *Iowa Admin. Code,* § 730, ch. 18.28(1).

Thus if our hypothetical clothier were to make two more sales of equipment within twelve months of the sale of the plane, the third sale would be a recurring sale. *Iowa Admin.Code,* § 730, ch. 18.28(1), ex. J.[5]

The second element of § 422.42(12)(a) is that at the time of the sale in question, the seller "must not be engaged for profit in the business of selling tangible goods or services taxed under section 422.42." To meet this element of the statute, the sale must be outside the regular course of the seller's business and unrelated thereto. *Iowa Admin.Code,* § 730, ch. 18.28(1). By way of example:

Sales of capital assets such as equipment, machinery, and furnishings which are not sold as inventory shall be deemed outside the regular course of business and the casual sales exemption shall apply so long as the sales are nonrecurring. *Iowa Admin.Code,* § 730, ch. 18.28(1).

Returning to the example of the sale of the company airplane by the retail clothier, the airplane sale is outside the regular course of the clothier's business. Provided the hypothetical clothier had not made two or more prior sales of assets outside the regular course of his business within the preceding twelve months, the sale of the airplane would fall within the § 422.42(12)(a) casual sales exemption.[6]

However, these sales cannot be included with the sale of the airplane to make the latter transaction a recurring sale. If this were the case, then no business could ever make a "casual sale", regardless of what was being sold. The Administrative Rules, however, clearly contemplate the possibility of a business making a casual sale. Accordingly, the sales of

---

**5.** The apparent reason for this formalistic line drawing is to prevent companies from secretly entering new retail markets without being liable for the concommitant sales tax. Without some cut-off point, a seller of clothes could begin to try out new, unrelated product lines without tax liability.

**6.** It is true that the clothier is selling his inventory on a regular basis throughout the year.

It is important to note that although the liquidation sales involved in these cases consisted primarily of the Debtors' respective inventories, each sale also included certain items of office equipment and other non-inventory items. Thus, in applying § 422.-42(12)(a) to the cases at bar, the Court will examine the inventory and non-inventory items separately.

*(1) Liquidation Sales of Inventory Assets*

■ The Court finds that liquidation sales of the inventory fails to meet either prong of the § 422.42(12)(a) test. The Trustee's first argument, that the sale of inventory is nonrecurring, has two basic points. First, he asserts that there were no sales of the Debtors' inventory prior to the liquidation sales. Second, he argues that there could be no further sales since all of the Debtors' inventory was sold at the liquidation auctions.

As to the first point, the Court finds that prior to each liquidation sale, the precise business engaged in by each Debtor was the sale of the inventory at issue.[7] Each Debtor engaged in innumerable sales of inventory as that was the principal and dominant means by which each stayed in business. The Iowa Supreme Court has defined the

term "recurring" to mean "repeat[ing]" or "reappear[ing]." *S & M Finance,* 162 N.W.2d at 508. Certainly, a liquidation sale of inventory is, in essence, a "repeat" of prior inventory sales thereof, and is therefore a recurring sale of that inventory.[8] This conclusion is not altered by the fact that a liquidation sale is different in form from prior inventory sales. Neither the Statute nor the Administrative Code make any reference to a difference in tax consequences based upon the form of the transaction. Rather, the focus is simply on the number of transactions which have taken place. *See, e.g., Iowa Admin.Code,* § 730, ch. 18.28, ex. J. Nor are the sales nonrecurring because they are the last ones. In defining nonrecurring sales, the Administrative Code states that if three sales are made in any twelve-month period, the last one alone is taxable, *Iowa Admin.Code,* § 730, ch. 18.28(1). Thus, the fact that no fourth sale is made does not relieve the seller of his tax liability for the third and final sale.[9]

Moreover, even if the Trustee could satisfy the first prong of § 422.42(12)(a), he would still be unable to meet the second prong of that section; namely, that sale be

---

inventory are separated from the sales of non-inventory assets and treated independently. (See *infra* at note 10).

7. There is no merit to the contention that the prior sales of inventory by each Debtor did not involve the sale of the same products and parts sold at the auction. If that were the controlling consideration, every sale would be nonrecurring since each piece of inventory is sold by the Debtors only once.

8. In both cases at bar, the liquidation sales were held within twelve months of the bankruptcy filings. Since both Debtors were operating their businesses prior to their filings, there were many more than three sales of inventory within the relevant twelve-month period.

9. A key consideration in finding the Debtors' inventory to be taxable is derived from the structure of the Retail Sales Tax Code. The Iowa Code makes it plain that in the absence of an exemption all sales made at retail are subject to the tax. The available general exemptions apply to items such as food and health care products. Another exemption is provided

for items incorporated into goods which will ultimately be sold at retail. *Iowa Code,* § 422.-45(12), (13), (19). Looking at this latter exemption, it can be seen that the raw goods will eventually be subjected to the retail sales tax when the finished product is sold to a consumer. The thrust of the "casual sales" exemption is to exclude from the retail tax items which have been sold at retail and taxed prior to the purportedly exempt sale—*e.g.,* the sale at a garage sale of articles which were purchased by the consumer at retail and therefore subject to the sales tax at the time of the consumer's original purchase. Looking at a business person's inventory, there has been no retail sales tax imposed thereon prior to sales of that inventory to consumers because all prior sales involving that inventory consisted of purchases for the purpose of "resale" and thus full outside the definition of a "retail sales." *Iowa Code,* § 422.42(3). When this inventory is sold at auction, much of it is sold at "retail." To allow such sales to escape the sales tax would frustrate the apparent tax policy of the Iowa Legislature.

made by a "seller [who at the time of sale is not] engaged for profit in the business of selling tangible goods ... taxed under § 422.43."

Under the Administrative Rules applicable to the second prong of § 422.42(12)(a), a distinction is made between sales made by a person who does not own or operate a retail business, and one who does. *Iowa Admin. Code,* § 730, ch. 18.28(1). In the former case, the sales are exempt from retail tax so long as they are nonrecurring. In the latter case, which applies herein, the Rules create a second distinction, and allow a person who does own or operate a retail business to make some types of sales which will be deemed "casual." The distinction is based upon whether the retailer is making sales in the usual course of his business. *Iowa Admin.Code,* § 730, ch. 18.28(1). The thrust of this distinction is that when a retailer sells his inventory or stock he is making sales in the usual course of his business and is thus "engaged for profit" at the time of the sale. When, however, a retailer sells off his office furniture or other non-inventory assets, he is making sales outside his course of business and thus is "not engaged for profit" at the time of sale. *Iowa Admin.Code,* § 730, ch. 18.21(1).[10] Applying this test to the sale of the Debtors' inventory, the Court finds that the liquidation of the Debtors' *inventory* was clearly within the regular course of their businesses. Therefore, the sale of the inventory fails to meet the requirements of the second prong of § 422.42(12)(a).

**10.** Arguably, under a straight reading of the statute, any retail sale made by a business person could be seen as a sale for profit, and thus taxable. In this way, the Administrative Rules appear to be inconsistent, creating an exemption where none exists under the Iowa Code. This would render the rule invalid under the doctrine of *Des Moines & Cent. Iowa Ry. Co. v. Iowa State Tax Comm'n.,* 115 N.W.2d 178, 181, 253 Iowa 994, 999 (1962) (attempt by the Tax Board to create a "casual sales" exemption by rule where there was no such exemption in the statute declared beyond the power of the Board) (See *supra* at note 3). However, defining the term "business", as found in § 422.42(12)(a) to include the concept of an 'occupation or pursuit' would harmonize the Code and the Administrative Rules. In the

### (2) *Liquidation Sales of Non-inventory Assets*

Turning to consider the Debtors' non-inventory assets, the Court finds that if § 422.42(12)(a) were the only relevant "casual sales" exemption, the liquidation sale of these assets would be exempt from retail sales tax. The liquidation of these assets constituted a nonrecurring sale, since the Department does not contend that there has ever been a prior sale of such non-inventory assets. As to the second prong of § 422.-42(12)(a), the Court finds that since the Debtors' "business" did not include earning a livelihood from the sale of these non-inventory assets, such sales were "outside the regular course of (their) business." *Iowa Admin.Code,* § 730, ch. 18.28(1) ex. A.

Thus, although, the Court finds that the liquidation sale of the Debtors' *inventory* is not exempt under § 422.42(12)(a) because it was both a recurring sale and within the regular course of the Debtors' respective businesses, the Court finds that the liquidation of the *non-inventory* assets would be exempt under § 422.42(12)(a) because the sale was nonrecurring and fell outside the regular course of the Debtors' businesses.

### C. *Section 422.42(12)(b).*

Having considered the tax status of the liquidations sales under § 422.42(12)(a), the Court must now consider the impact of § 422.42(12)(b) on the sales in these cases.[11]

case of Hub's Repair, the Debtor's 'occupation' was the selling of farm implements, not office furniture. Seen from this perspective, the allowance of an exemption in the Rules for sales of assets which fall "outside the regular course of business" is compatible with the Statute. Moreover, it should be noted that the non-inventory assets—the office furniture—have already been taxed once at retail. This occurred when Hub's originally purchased the office furniture at retail for use in its business. Allowing the "casual sales" exemption to reach this far does not frustrate the State's policy of taxing each retail sale at least once.

**11.** The Trustee stated in his brief that this section was not applicable to his case. Given the Court's finding that the liquidation auctions involved retail sales, this is a costly concession.

Section 422.42(12)(b) was adopted in 1978, some fifteen years after § 422.42(12)(a).

Unlike § 422.42(12)(a), which is directed at all retail sales, § 422.42(12)(b) is directed at a narrow category of retail sales; the sale by a business owner of all or substantially all of the assets which go to make up his trade or business.[12]

Where a business owner sells his business to another who steps in and continues to run the operation as a going concern, such sale is free from retail sales tax. The Administrative Rules lay out the elements of this exemption:

> "When retailers sell all or substantially all of the tangible personal property held or used in the course of the trade or business for which retailers are required to hold a sales tax permit, the casual sale exemption will apply to exempt such sales *only* when the following circumstances exist: (a) the trade or business must be transferred to another person and (b) the transferee must engage in a similar trade or business." *Iowa Admin.Code,* § 730, ch. 18.28(3). (Emphasis added).

In the cases at bar, all of the Debtors' tangible personal property was sold or distributed during the administration of each estate. Furthermore, both Debtors were required to hold sales tax permits as a condition precedent to their doing business in Iowa. *Iowa Code* § 422.53(1).

In neither case, however, did the liquidation of the bankruptcy estates involve the sale of the Debtor's business to a purchaser who was going to carry on these businesses as a "going concern." Therefore, under the Code and Administrative Rules, the sale of both the inventory and non-inventory assets are outside the casual sales exemption of § 422.42(12)(b), and are taxable events. *See, also, Iowa Admin.Code,* § 730, ch. 18.-28(3), ex. L.

Looking only at the sale of the Debtors' inventory, there is no conflict between the two "casual sales" exemptions. Under both definitions, the sale of the inventory is subject to the tax.[13] With respect to the tax status of the non-inventory assets, however, a conflict arises between the requirements found under § 422.42(12)(a) and those found under § 422.42(12)(b). Under the former section, the sale of the non-inventory assets is exempt, but under the latter section, the sale of those very same assets in the context of a liquidation of an entire business is deemed subject to the retail sales tax. Section 422.42(12)(b) is both more specific and more recent than § 422.-42(12)(a), speaking directly to the case of a retailer going out of business. More importantly, to allow a person looking to liquidate his business to seek shelter under either § 422.42(12)(a) or § 422.42(12)(b) would render the latter section a virtual nullity.[14] Giving § 422.42(12)(b) a viable

---

Once a sale is determined to be at retail—as is the case here—it is taxable, and an express exemption must be found in order to avoid the tax. The Court will analyze the liquidation sales under § 422.42(12)(b).

**12.** It seems likely that either the Debtors or the Trustee would be deemed the "retailer" within § 422.42(12)(b). If this were not the case, then a trustee who could sell another's business as a going concern to a buyer would not be able to make use of the "casual sales" exemption found in § 422.42(12)(b). This Court believes that such an inconsistent application of the statute could be seen as an unfair discrimination against sales made by any type of trustee or receiver. *e.g.* note 2, *supra.*

**13.** It is worth noting that under § 422.42(12)(b) there is no taxable sale if A sells his business to B who takes over and continues it. This makes sense as to the inventory, since A is selling a

stock of goods to B who is then going to turn around and *resell* those goods to the public. In other words, the inventory is being sold for purposes of "resale" within the meaning of *Iowa Code* § 422.42(3), and is therefore not a taxable retail sale. *Iowa Code* § 422.43. Where, however, the inventory is sold off to consumers and users—where the business is not sold as a going concern—exempting the sales from the tax would frustrate the State's taxing policy. (see *supra* note 9).

**14.** Section 422.42(12)(b) is a limitation upon the "casual sales" exemption allowed in § 422.-42(12)(a). To demonstrate this, the contrary should be assumed; that § 422.42(12)(b) simply *adds* a new casual sales exemption to the Statute, freeing the sale of a business as a going concern by A to B from tax liability. If this were the extent of § 422.42(12)(b), it would be unnecessary, since this very sale

meaning requires that for both inventory and non-inventory assets it be the exclusive source for the "casual sales" exemption in the context of a sale of an entire business. This being the case, the Court finds that all of the retail sales which took place at the bankruptcy liquidations of the Debtors' property are outside the "casual sales" exemption, and therefore are subject to the retail sales tax.

## DIVISION III

Having determined that the liquidation sales held by the Trustee are subject to the Iowa retail sales tax, the Court must now consider whether the imposition of such a tax is permissible under federal law.

■ The first issue presented is the reach of 28 U.S.C. § 960, which subjects federal officers acting under authority of a United States Court to applicable state and local taxes.[15] Section 960 reads as follows:

> Any officers and agents conducting any business under authority of a United States Court shall be subject to all federal, state, and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

The primary thrust of this statute was to equalize the tax status of businesses being operated as going concerns by federal receivers with the tax status of their competitors. *Palmer v. Webster & Atlas National Bank of Boston,* 312 U.S. 156, 162–163, 61 S.Ct. 542, 545, 85 L.Ed. 642 (1940). Congress enacted § 960 against a backdrop of a number of recent lower federal court decisions which had held that a "federal receiver operating a business (was) exempt from state sales tax." *Palmer,* 156 U.S. at 163,

61 S.Ct. at 545. Congress felt that absent equal tax treatment, federal receivers enjoyed a competitive advantage and states lost thousands of dollars of revenue per month. *Id.*

The Supreme Court, however, has never faced the question of the applicability of § 960 to cases involving liquidation sales where the trustee does not operate a debtor's business as a going concern. *Palmer, supra,* considered whether a trustee operating one bankrupt railroad was liable for additional franchise taxes assessed against him resulting from his operating the business of his former lessor (also a bankrupt railroad) even though he was being ordered by the court to run the additional railroad to avoid a public inconvenience flowing from the loss of local rail service. There was no question that the trustee was operating both railroads as going concerns, and thus the question of the reach of § 960 to liquidation sales was not at issue. *See also Nicholas v. United States,* 384 U.S. 678, 693 n. 28, 86 S.Ct. 1674, 1685 n. 28, 16 L.Ed.2d 853 (1966) (no issue raised concerning the susceptibility to tax under 28 U.S.C. § 960 of a trustee whose activities do not amount to the conduct of business in any meaningful sense.)

The Court of Appeals for the Eighth Circuit has squarely faced the question of the reach of § 960. In *State of Missouri v. Gleick,* 135 F.2d 134, 136–137 (8th Cir.1943), the court held that a liquidating trustee as an employer was required to pay applicable state unemployment taxes for employees earning wages in the course of gathering and liquidating the bankrupt's property. After determining that Missouri's unemployment compensation law reached a liquidating trustee in the course of his duties as

---

would also be exempt under § 422.42(12)(a). The sale of the non-inventory assets would be both a nonrecurring event *and* outside the "regular course of the seller's business." *Iowa Admin.Code,* § 730, ch. 18.28(1), and thus would be exempt from the retail sales tax under § 422.42(12)(a). Turning to the sale of the inventory, it can be seen that the "casual sales" exemption would likewise not be necessary because in the case of a sale of a business to one who is going to carry on that business, the

inventory is sold for purposes of "resale" and thus would not even come within the definition of a taxable retail sale. *Iowa Code* § 422.43. Giving § 422.42(12)(b) a viable meaning requires that it be the sole "casual sales" exemption applicable to liquidations of an entire business.

15. 28 U.S.C. § 960, c. 646, 62 Stat. 927 (1948), *formerly* 28 U.S.C. § 124a, c. 585, 48 Stat. 993 (1934).

administrator of the estate, the court focused on the statutory language "conduct any business" to determine whether § 960 encompassed the activities of a liquidating trustee. *Gleick*, 135 F.2d at 137. In rejecting the trustee's argument that "conduct any business" was limited to trustees who were actually carrying on the day to day business of the bankrupt, the court stated:

> The phrase 'conduct any business' should not receive a narrow and restricted interpretation, but should be construed to include any activity or operation in connection with the handling and management of the bankrupt estate. That this was the intention of Congress is clear from further language of this section, ... which makes the trustee subject to all state and local taxes applicable to such businesses ... as if such businesses were conducted by an individual or corporation. Obviously, if the bankrupts themselves liquidated their respective businesses they would each be liable for contributions with respect to services performed for them in connection with such liquidation. *Gleick*, 135 F.2d at 137.

■ Thus, the key for the *Gleick* court was whether a similarly situated person conducting his activities outside of bankruptcy would be subject to the relevant taxes. In both cases at bar, the Debtors' would have been assessed a sales tax on all retail sales had they liquidated their businesses in the same manner as did the Trustee. *Iowa Code* § 422.43. Thus, under the analysis utilized by the court in *Gleick,* the Trustee is required to collect and remit the sales tax.[16]

■ Even if 28 U.S.C. § 960 is found not to reach sales made by a liquidating trustee,

this Court finds that that section does not manifest an implied Congressional intent to prohibit the levying of a sales tax on a liquidation sale. In *Swarts v. Hammer,* 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904), the Supreme Court was faced with the question of whether a liquidating trustee was liable to collect and remit property taxes assessed against the property of a business debtor held by the estate. The lower court had found that the tax was assessed by the state *after* the bankruptcy had commenced. *Swarts v. Hammer,* 120 F. 256 (8th Cir.1903). The Supreme Court affirmed, finding that the estate was required to collect and remit the tax. *Swarts,* 194 U.S. at 444, 24 S.Ct. at 696. Regarding the authority of Congress to free a bankruptcy estate from tax liability, the Court stated:

> The question is not the extent of the power of Congress over the subject of bankruptcy, but what Congress intended by the act of 1898 ... [The property of the estate] is dedicated, it is true to the payment of the creditors of the bankrupt, but there is nothing in that to withdraw it from the necessity of protection by the state and municipality *or which should exempt it from its obligations to either.* If Congress has the power to declare otherwise, and wished to do so, the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt. *Swarts,* 194 U.S. at 444, 24 S.Ct. at 696. (Emphasis added).

The rule laid down in *Swarts* is that property in bankruptcy is subject to applicable state and local taxes absent a clear

---

16. The Third Circuit is in accord with this view. *In re I.J. Knight Realty Corporation,* 501 F.2d 62 (3rd Cir.1974). The Ninth Circuit claims to have held that § 960 does not reach sales by liquidating trustees. For example, in *California State Board of Equalization v. Goggin,* 191 F.2d 726 (9th Cir.1951) (*Goggin I*), the court held that a liquidating trustee was not making sales in the course of conducting a business but rather was in the process of putting an end to a business. *Goggin I,* 191 F.2d at 729. The court then went on to interpret the California retail sales tax law to be applicable only to persons "engaged in the business of making sales at retail." *Goggin I,* 191 F.2d at 729. While the court was using the language of § 960 in holding that a liquidating trustee was not "conducting a business," it is arguable that the court simply construed the State law to exclude sales made by such trustees, and thus did not reach the federal question. *Goggin I,* 191 F.2d at 730. *See, also, In re Supergate Open Steel Flooring Co.,* 1 B.R. 660 (Bkrtcy.C.D.Cal.1979).

expression by Congress of an intent to create an exemption. There is nothing in the legislative history of § 960 to indicate that Congress affirmatively sought to bar state and local governments from levying taxes upon liquidation sales. H.R. 1138, 73d Cong., 2d. Sess., S.Rept, 1372, 73d. Cong., 2d. Sess. (1934). Section 960 was drafted thirty years after *Swarts v. Hammer,* and Congress gave no hint of any intention to change the principle announced by that decision.[17] *See, In re Hatfield Construction Company,* 494 F.2d 1179, 1181 (5th Cir.1974) (retail sales made by the trustee in the course of liquidating the estate were subject to applicable Georgia sales tax, there being no bar to the tax under federal law).

▌ Moreover, the estate's liability for the sales tax is supported by the Bankruptcy Code itself. Section 503 of the Code provides for the allowance of claims for administrative expenses. One such allowed administrative expense is:

"*any tax* incurred by the estate ... except a tax of a kind specified in section 507(a)(6) of this title. 11 U.S.C. § 503(b)(1)(B)(i)."[18] (Emphasis added).

Given that § 503 applies to all bankruptcies, it would seem that Congress contemplated that state and local tax laws would encompass various aspects of a liquidation case. Thus this Court finds that a sales tax arising out of a post-petition liquidation sale is a tax incurred by the estate within the meaning of § 503(b)(1)(B)(i).

▌ The final argument raised by the Trustee is that the imposition of a sales tax upon a liquidation sale is an undue burden on him as a trustee, and constitutes a tax on the processes of the bankruptcy courts. As to the first point, the Court finds that the only burden imposed on the Trustee is the administrative difficulty created by allowing the State to tax the sale. The Trustee is not personally liable for the tax because it is an expense of administering the estate. The tax will be a part of the proceeds of the sale, and the Trustee will only be required to set aside from the sale proceeds monies equal to the amount of the tax. The tax can never exceed three percent of the gross proceeds of the sale, and thus there will always be funds available to remit to the State.

The question of whether a retail sales tax assessed on a bankruptcy liquidation sale is a tax upon the processes of the bankruptcy courts is not subject to easy determination. The cases holding that such a tax would be a levy upon court processes provide little analysis. In *California State Board of Equalization v. Goggin,* 245 F.2d 44, 46 (9th Cir.1957) (*Goggin II*), the court stated that the cardinal purpose of bankruptcy liquidation is to equitably distribute the debtor's assets to his creditors, and that "any act which hinders, delays, or burdens the accomplishment of this vital purpose constitutes an unlawful interference with the process of the court of bankruptcy and is invalid." Without any further explanation, the court, in *Goggin II,* concluded that a sales tax levied on a court ordered liquidation sale is an unlawful burden on the es-

---

17. Even if *Swarts* stands merely for the proposition that, property in a liquidation bankruptcy held by the estate is subject to post-petition *ad valorem* taxes, it is still difficult to see how § 960 can be read to prohibit the levying of taxes in liquidation cases because the trustee is not "conducting a business" as a going concern. If § 960 mandates that trustees are liable for taxes only when they are operating a business on a day-to-day basis, then Congress must be held to have overruled *Swarts.* There is no indication that Congress intended to do any such thing.

18. 11 U.S.C. § 507(a)(6)(A)(i) allows a tax claim priority for prepetition taxes measured by gross receipts, such as the Iowa retail sales tax. The most sensible interpretation of 11 U.S.C. § 503(b)(1)(B)(i)'s use of the phrase "except a tax of a kind specified in section 507(a)(6)" is that it refers not to the type of tax but to the time the tax first came due—*i.e.,* pre-petition versus post-petition. It would make little sense to deny administrative expense status to a tax claim incurred purely by the trustee after the petition and attributable to the trustee's administration merely because in character the kind of tax resembles the tax described by section 507(a)(6). 3 *Collier on Bankruptcy,* ¶ 503.04 at 503–23, (15th ed. 1979). This being the case, the Code affirmatively provides for post-petition sales tax claims arising out of liquidation sales.

sential processes of the bankruptcy court. *Goggin II,* 245 F.2d at 46.

The author of *Goggin II,* however, had himself previously recognized that "a tax may be levied upon specific property in the hands of a trustee in bankruptcy." *California State Board of Equalization v. Goggin,* 191 F.2d 726, 730 (9th Cir.1951) (*Goggin I*) (Fee concurring) (citing *Swarts v. Hammer,* 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904)). In both the case of a tax on property held by the trustee and a sales tax on a liquidation sale, the size of the estate is diminished because of the tax. In both cases, the Trustee will be required to set aside monies of the estate in order to pay the tax. Yet in neither case is the distribution *among* a bankrupt's creditors made any less equitable. It is thus difficult to see how a property tax is any less of a "burden" upon the processes of the courts than is a sales tax. The Trustee is not prevented or impeded from making sales of estate property or distributing the proceeds thereof. *See In re Leavy,* 85 F.2d 25, 26–27 (2d Cir.1936) (liquidating trustee liable for city sales tax assessed on sale of debtor's assets).

This Court adheres to principles of tax immunity laid down by the Supreme Court in *Graves v. N.Y. ex. rel O'Keefe,* 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1938) (nondiscriminatory state income tax imposed on federal employee upheld against claim of federal tax immunity):

> The implied immunity of one government and its agencies from taxation by the other should, as a principle of constitutional construction, be narrowly restricted. For the expansion of the immunity of the one government correspondingly curtails the sovereign power of the other to tax.... *Graves,* 306 U.S. at 483, 59 S.Ct. at 599.

In *Graves,* the Supreme Court held that Congress had not created an express immunity from taxation for federal agency employees. 306 U.S. at 483, 59 S.Ct. at 599. Since Congress had not affirmatively prohibited assessment of the Iowa Sales tax, the same holds true in this case. The cases at bar involve the application of a nondis-

criminatory tax imposed upon retail sales. Purchasers at the liquidation auction are merely paying the same taxes that they would have to pay at a similar non-bankruptcy auction. *Iowa Code* § 422.43; *Leavy,* 85 F.2d at 27.

■ *Graves* recognized that the application of a nondiscriminatory state income tax to federal employees was legitimate even though it might impose an indirect economic burden upon a federal instrumentality. *Graves,* 306 U.S. at 487, 59 S.Ct. at 601. In the cases at bar, the tax is an expense of administering the estate, payable from the assets thereof. *In re Hatfield Construction Company,* 494 F.2d 1179, 1181 (5th Cir.1974). This Court holds that such an indirect economic detriment to the creditors of the estate is not an impermissible burden on this Court, its agents, or processes.

## DIVISION IV

■ The Court notes that in the case of Hubs Repair, the Department filed a tax assessment against the Trustee personally, and charged him with a penalty for failing to turn over the taxes allegedly due. In addition, the Department retained the Trustee's personal income tax refund to secure the payment of the taxes. The Court finds that the Department is not entitled to assess a penalty or charge interest on the amount due because of the Trustee's nonpayment of the tax. *Iowa Code* § 422.58(1) provides that the Department is not entitled to penalize or charge interest to a taxpayer who fails to remit sales taxes when there is "reasonable cause" for the nonpayment of the tax. Since this is a case of first impression, involving complex questions of state and federal law, the Trustee's claim that the sales were exempt from the state retail sales tax was clearly made in good faith. Therefore, neither the Trustee nor the creditors of the Hubs estate should be penalized for presenting this claim.

In addition, the Court notes with extreme distaste and displeasure that the Department assessed the retail sales tax against the Trustee personally and retained his per-

sonal income tax refund to secure the same. The Department took this action after these issues were submitted to this Court. There was never any question that if the Department succeeded on the merits that it would be entitled to its proper share of the sale proceeds. Therefore, there was no need for the Department to harass the Trustee by withholding his personal income tax refund and attempting to hold him personally liable. Any recurrence of such tactics by the Iowa Department of Revenue will be dealt with in an appropriate fashion.